HENRY STILLINGS *v.* DARIUS STILLINGS.

SAME *v.* LEROY STILLINGS.

An oral contract, by which A was to convey his farm to B as soon as B should move upon it, and B was to support A and take care of him during his life and was to give him a "life lease" of the farm as security for performance, is enforceable in equity, if B, relying upon the contract, has moved upon the farm, supported A and taken care of him, and made valuable improvements.

If C, while B is in possession under the contract, buys a part of the land from A, having actual or constructive notice of the contract, he cannot hold against A.

BILLS IN EQUITY, the one in the first suit for the specific performance of a contract to convey real estate, and the other for a conveyance of a portion of the real estate referred to in the contract.  Facts found by a referee.  Darius is the father of the plaintiff and Leroy.  In July or August, 1885, Darius agreed to deed to the plaintiff his homestead farm, containing 160 acres, as soon as the plaintiff should get moved upon it, and to let the plaintiff have his interest in the crops raised on the farm that year, in consideration of which the plaintiff agreed to move with his wife upon the farm, and support and take care of Darius as long as he lived, and to secure the performance of his part of the contract by giving Darius a life lease of the farm.  The agreement was not in writing.  Relying on the agreement, the plaintiff moved upon the farm in September, 1885, and has occupied it and carried it on ever since, and Darius has been a member of his family and been supported in substantially the same style as he had previously lived, and has been well and kindly cared for by the plaintiff and his wife.  The plaintiff began to make improvements soon after moving upon the farm.  Among other things, he built 75 to 100 rods of stone wall, shingled the buildings, laid a new floor in the barn, painted the house inside and outside, papered the rooms, and commenced the building of a shed 20 by 30 feet in size.  He expended for betterments and repairs, other than ordinary repairs, sums which, with interest, amount to $690.  The plaintiff occasionally suggested to Darius that he ought to deed the farm to him as was agreed, and Darius expressed his willingness to do so when it became convenient; and on one occasion he went to a justice of the peace to have the papers drawn, but the justice not understanding the business, and having no blanks, it was not done.  Darius changed his mind, and on October 18, 1892, denied that the plaintiff was the owner of the farm, forbade him from doing any more work upon it, and gave him formal notice to quit.

April 13, 1889, Darius conveyed to Leroy a part of the farm known as "lot No. 10" for $500, which was approximately the value of the lot.  The deed contained this provision:  "Said grantee assumes and agrees to pay the mortgage given by said grantor to David W. Smith, dated October 10, 1887, securing note of $166, dated October 7, 1886, the sum paid by said grantee on said mortgage debt to be deducted from the purchase-money thereof."  The plaintiff learned of the conveyance the same or the next day, but did nothing about it until bringing this suit, except to reproach Leroy for wronging him by the transaction. The facts apparent to common observation were such at the time of the conveyance as to put a man of ordinary prudence on inquiry in respect to the relations between the plaintiff and Darius and the plaintiff's rights in the property ; and such inquiry would have led to a knowledge of the agreement between the plaintiff and Darius above mentioned.

*Ladd & Fletcher*, for the plaintiff.

*Drew, Jordan & Buckley*, for the defendants.

SMITH, J.   The contract upon which the plaintiff relies, not being in writing, is void under the statute of frauds (G. L., c. 220, s. 14, P. S., c. 215, s. 1), unless it falls within some exception which equity recognizes.   The plaintiff relies upon part performance of the contract to take it out of the statute.   Part performance is not sufficient for this purpose, unless it places the party in a situation that will operate as a fraud upon him if the agreement is not performed.   *Tilton* v. *Tilton*, 9 N. H. 385, 390; *Kidder* v. *Barr*, 35 N. H. 235, 255.   In 2 Sto. Eq. Jur., s. 761, the author says,—" If upon a parol agreement a man is admitted into possession, he is made a trespasser, and is liable to answer as a trespasser, if there be no agreement valid in law or equity.   Now, for the purpose of defending himself against a charge as a trespasser, and a suit to account for the profits in such a case, the evidence of a parol agreement would seem to be admissible for his protection; and if admissible for such a purpose, there seems to be no reason why it should not be admissible throughout."

It is settled in this state that equity will decree specific performance of a parol contract for the conveyance of land, if a party on the faith of the contract has gone into possession of the land and made valuable improvements upon it.   *Newton* v. *Swazey*, 8 N. H. 9; *Tilton* v. *Tilton*, 9 N. H. 585; *Burnham* v. *Porter*, 24 N. H. 570, 580; *Kidder* v. *Barr*, 35 N. H. 235; *Seavey* v. *Drake*, 62 N. H. 393; *Brown* v. *Prescott*, 63 N. H. 61.   In this case the plaintiff went into possession of the farm relying upon the parol contract, and, besides supporting and caring for Darius as he had agreed, he expended a large sum of money in making improvements and betterments upon the farm.   The case clearly comes within the foregoing authorities.   It is distinguishable from *Ham* v. *Goodrich*, 33 N. H. 32, which is relied on by Darius.   In that case the conveyance agreed upon was not to take effect until the death of the owner, and, it not appearing that possession of the land was to be surrendered by him in the meantime, possession not being necessary for the fulfilment of the proposed conditions, it was held that the possession of the other party to the agreement in the lifetime of the owner was not delivered in part execution of the agreement, and hence might be trespass, even if there was a complete execution of the agreement.   In this case the plaintiff was admitted to possession in pursuance of the agreement by which he was to have a deed at once, and unless the agreement protects him he would be liable as a wrongdoer.   *Ham* v. *Goodrich* is an authority for the plaintiff instead of for Darius.

The fact that the plaintiff was to give his father " a life lease " of the farm did not affect the plaintiff's possession, for this instru-

December, 1893.]     LIBBY v. COMPANY.                    587

ment (whether properly termed a life lease or not) was intended to be mere security for the performance of the plaintiff's part of the agreement. The plaintiff could not even begin performance of the agreement without moving upon and taking possession of the farm. The effect of the life lease was to be like that of a mortgage. When land is conveyed, and mortgaged back with a condition for the support of the mortgagee during life, the mortgagor is entitled to the possession until the condition is broken or waste is committed. *Hartshorn* v. *Hubbard*, 2 N. H. 453; *Dearborn* v. *Dearborn*, 9 N. H. 117 ; *Flanders* v. *Lamphear*, 9 N. H. 201;—and see *Smith* v. *Moore*, 11 N. H. 55, 60.

The agreement is sufficiently definite and certain to warrant a decree of specific performance. Unless the support and care to be furnished to Darius was different from what would reasonably be required for a man of his age, health, and station in life, there was no occasion to be more specific regarding the same. In all other respects the agreement is explicit.

Leroy had constructive notice, at least, of the agreement between the plaintiff and Darius. The facts apparent to common observation were such as to put a man of ordinary prudence on inquiry in respect to the plaintiff's rights in the property, and such inquiry would have led to a knowledge of the agreement. The plaintiff's possession of the real estate was of itself sufficient for the purpose. *Smith* v. *Moore*, 11 N. H. 55, 65. The plaintiff's act in reproaching Leroy for making the purchase shows that he did not assent to it. Leroy took nothing by his deed from Darius, as against the plaintiff. His deed provided that he should pay Darius's note to Smith for $166, dated October 6, 1886, and secured by a mortgage of the lot, dated October 10, 1887. It seems that this note was given one year, and the mortgage two years, after the plaintiff took possession of the farm under the agreement with his father. It does not appear whether the mortgagee knew of the agreement between Darius and the plaintiff, nor whether the mortgage was given with the knowledge and assent of the plaintiff. The plaintiff is entitled to decrees establishing his title to the farm subject to the Smith mortgage ; and, if he so desires, he should have a further trial in respect to the validity of that mortgage, and such decree relating to it as he may be entitled to.

<i>Case discharged.</i>

All concurred.