(77 App. Div. 20.)

### BRAUN v. OCHS et al.

(Supreme Court, Appellate Division, Fourth Department. November 18, 1902.)

**1. SPECIFIC PERFORMANCE—PAROL AGREEMENT TO DEVISE—CERTAINTY.**
   In a suit against an administrator and heirs to compel specific performance of an agreement by decedent to devise her house and lot to plaintiff, who was a niece of decedent, plaintiff's evidence was that decedent and her unmarried sister lived in the first story of the house, doing their own work, while plaintiff, her husband and children, lived upstairs. Plaintiff and family being about to move, decedent promised that, if plaintiff would stay and care for her as long as she lived, she would will the house to plaintiff. Plaintiff remained, but no change in the manner of living occurred, and there was nothing to show the manner of care intended. *Held*, that the contract was incomplete and indefinite, and not one which a court of equity would enforce.

**2. SAME.**
   A parol agreement to devise real estate will not be specifically enforced unless the proof be clear as to the nature and specific character of the contract.

**3. SAME—CONSIDERATION—SERVICES.**
   Where the consideration for the promised conveyance of a house and lot by will consists of services to be rendered, and the services have been performed, equity will not compel a performance unless the character of the services is so peculiar that it is impossible to estimate their value by a pecuniary standard, or unless the agreement has been so far executed that a refusal would operate as a fraud upon the party who has performed his part, and place him in a situation in which he could not be compensated in damages.

   Spring and Hiscock, JJ., dissenting.

Appeal from special term, Erie county.

Bill by Frances Braun against Andrew Ochs, administrator, and others, to compel specific performance of an alleged agreement to devise certain realty. From a decree for plaintiff, defendants appeal. Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Albert C. Spann, for appellants.
Franklin R. Perkins, for respondent.

DAVY, J. This is an appeal by the defendants from a judgment of the supreme court, rendered at the Erie county special term, directing specific performance of a parol agreement requiring the defendants to convey by deed to the plaintiff a house and lot (No. 62 Spruce street, in the city of Buffalo) inherited by them from their sister, Josephine Speidel. The complaint alleges that Josephine Speidel was on the 15th day of April, 1895, and for many years prior thereto, a widow, without issue, and that she died intestate at the city of Buffalo on or about the 14th day of January, 1900; that on said 15th day of April, 1895, the plaintiff and her husband were about to remove to the city of Boston, Mass., where plaintiff's husband had been employed as a cabinetmaker, and the said Josephine Speidel agreed that, if the plaintiff would remain in Buffalo and take care of her as long as she lived, she would will to her a house and lot, —No. 62 Spruce street. The Speidels had no children, and their home was also a home for needy nephews, nieces, and other poor relatives of the family. The plaintiff was taken into the family when she was 6 years old, and was educated and supported by the Speidels until the year 1887, when she married Julius Braun and moved away. Eleanora Schaff, a niece, was taken into the family in 1878, when she was 7 years old, and lived there for 12 years, when she entered a convent. In 1890 Frank Ochs, a nephew, at the age of 10, and Barbara Ochs, a sister of the deceased, both became members of Mrs. Speidel's family. Frank Ochs lived with her for about 4 years, and Barbara continued to live with her down to the time of her death. George Schaff, another nephew, lived with Mrs. Speidel from 1891 to 1897. During the years that these various persons lived with the Speidels, they all helped to do the necessary family housework. In 1890, on the death of Mrs. Speidel's husband, Barbara Ochs, an unmarried sister, went to live with Mrs. Speidel, and remained with her down to the time of her death, in 1900. During these 10 years the plaintiff, with her husband and four or five children, lived in an upstairs flat; paying $6 a month rent to Mrs. Speidel, who was the owner of the flat. The plaintiff, together with her four or five small children, had her husband and a boarder to cook and wash for. She had no servant, and did her own washing. On the other hand, Mrs. Speidel and her sister did their own housework. Such, in substance, was the condition of affairs in April, 1895, at which time the plaintiff claims the alleged oral contract was made. It appears that there was no change in the condition of affairs or the manner of living subsequent thereto. The oral contract rests entirely upon the testimony of the plaintiff's husband. No one was present when the alleged conversation took place, except Mrs. Speidel, this plaintiff, and her husband. The latter's testimony as to the contract is as follows:

"It was right after Easter, 1895,—a few days after I came back from Boston. My wife, Mrs. Speidel, and myself were present. I came home in the evening, and Mrs. Speidel was in our home, and my wife and myself; and I told my wife, in the presence of Mrs. Speidel, that I had engaged Mr. Harmon to pack our furniture and move to Boston. He was a sort of a carpenter. I had engaged him to pack our furniture, and Mrs. Speidel said to me if I am getting crazy to take the children and my wife away from her, as those

were her only comfort now, and she said I should stay. Mrs. Speidel said to my wife, 'You remember what you promised Mr. Speidel,—that you would stay with me and take care of me as long as I lived, and as I should look out for you?' And Mrs. Speidel then said to us,—to me,—I will find enough work here to earn my bread and butter, and I should stay. I said I had no work, and she said that she will help me out. Mrs. Speidel then said to my wife that she should stay, and should take care of her so long as she lived, and she will will her this house and lot,—No. 62 Spruce street; and I said to Mrs. Speidel, 'If that is the case, I will stay.' My wife say she will stay and take care of her so long as she lives, and do what she asks her to do."

On his cross-examination, plaintiff's husband testified that nothing was said about how she was to be taken care of.

Assuming the facts as to the agreement to be as testified to by the plaintiff's husband, the case is not one in which the extraordinary powers of a court of equity should interfere to enforce specific performance of the contract. It is not one of those exceptional cases where courts of equity have intervened. On the contrary, it is one of those cases similar in every respect to those which courts of equity have repeatedly refused to specifically enforce. I can find neither principle nor precedent upon which to base a decree in favor of the plaintiff upon her alleged oral agreement. The authorities all seem to be against a court's undertaking to enforce such a contract. How can the court determine what is meant by the words "care for Mrs. Speidel during her lifetime"? Nothing is said as to the manner in which she was to be cared for. Whether she was to be taken into plaintiff's family and furnished with apartments, or should be boarded and lodged by the plaintiff, with many other details, are all left to conjecture, and unprovided for in the alleged agreement. In respect to those most important matters the contract is wholly incomplete and indefinite. It is evident that the parties could not have had in mind and did not agree as to the nature of the care and the extent of services which the plaintiff was to render during the lifetime of the decedent. It appears from the evidence that the plaintiff did not have the care, charge, and oversight of Mrs. Speidel's household or of her property. Neither did she have the care and safety of her person. She assumed no responsibility whatever in that respect. Moreover, the contract is unfair, because it leaves the kind of care to be furnished and the manner of furnishing it wholly to the discretion of the plaintiff. Claims of this nature against a dead woman's estate, resting entirely in parol, based largely upon loose statements made by an interested party years after the oral agreement was made, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny, to prevent injustice being done to the heirs of the decedent. It appears from the testimony that neither the plaintiff nor her husband ever alluded to this alleged contract, to any of the defendants or any other person, either before or after Mrs. Speidel's death, until this action was commenced. It also appears that shortly after Mrs. Speidel's death the plaintiff's family moved away from the flat occupied by them, without mentioning any agreement or asserting any claim to the possession and ownership of the property. It is hardly reasonable to suppose that the plaintiff and her husband would have removed from

the premises without having announced the existence of such an agreement, and asserted their rights to retain possession, if such a contract had been made. These facts, coupled with the admissions made by the plaintiff, have a strong bearing upon the appellants' contention that no such contract was ever made. After Mrs. Speidel's death, the plaintiff stated to Sister Ferdinanda, one of the nieces brought up by the decedent, that, if she did not get anything from the estate, she would sue for the work she had done. She said to George Schaff that, if she did not get anything from Mrs. Speidel's estate, they had got at least $500 out of it, and that she was going to sue for wages. Frank Ochs, a nephew, who had lived with Mrs. Speidel four or five years, testified that plaintiff told him that she was glad that there was no will, because they could not say that she influenced Mrs. Speidel in making it. In all of these conversations she never alluded to any contract having been made between her and the decedent. The services claimed to have been rendered by the plaintiff cannot be urged, to furnish any proof of the existence of a contract. The plaintiff's principal witness (her husband) admitted that there was no change in the manner of living and the services rendered before and after the time of the alleged contract. Therefore such services did not even tend to show that a contract was made.

Applying well-settled principles to the case under consideration, we think that the judgment of the special term was not warranted by the evidence. The contract was not made with parents for the benefit of an infant who had been adopted by the family as one of their children, and should share in the estate of the decedent; but it was made directly with an adult, who had no more valid claim to decedent's property than the other nieces or nephews. The statute requires that an agreement relating to real estate shall be in writing, expressing a consideration; and, where a parol agreement is sought to be established, the proof should be clear as to the nature and specific character of the agreement, so that it can be eventually carried out and enforced. It has been frequently held that, in order to constitute a valid parol or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean; and, if an agreement be so vague and indefinite that it is not possible to collect the full intention of the parties, it is void. Neither the court nor the jury can make an agreement for the parties.

In Stanton v. Miller, 58 N. Y. 200, Judge Andrews says:

"It is an elementary principle governing courts of equity in the exercise of this jurisdiction that a contract will not be specifically enforced unless it is certain in its terms, or can be made certain by reference to such extrinsic facts as may, within the rules of law, be referred to, to ascertain its meaning."

See Shakespeare v. Markham, 72 N. Y. 400.

Where contracts of this character are attempted to be established by parol, the temptation and opportunity for fraud are such that they are looked upon with suspicion; and the courts require the clearest evidence that such a contract be founded on a valuable consideration,

and be certain and definite in all its parts. Shakespeare v. Markham, 10 Hun, 311; Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332.

It has also been held that, under the terms of an oral agreement to convey land upon the payment of a specific sum of money, such payment alone is deemed not sufficient to entitle the party to a specific performance of the contract, unless possession has been delivered and taken thereunder, for the reason that a recovery of the consideration or for damages may be had in an action at law. Miller v. Ball, 64 N. Y. 286; Winchell v. Winchell, 100 N. Y. 159, 163, 2 N. E. 897; Ludwig v. Bungart, 48 App. Div. 616, 63 N. Y. Supp. 91. So where the consideration for the promised conveyance of a house and lot by will consists of services to be rendered, and the services have been performed, but the land is neither conveyed by deed nor will, equity will not compel a conveyance unless the character of the services is so peculiar that it is impossible to estimate their value by a pecuniary standard (Rhodes v. Rhodes, 3 Sandf. Ch. 279; Matthews v. Matthews, 133 N. Y. 679, 31 N. E. 519; Shakespeare v. Markham, supra, affirmed by the court of appeals in 72 N. Y. 400; Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332; Ludwig v. Bungart, supra), or unless the agreement has been so far executed that a refusal would operate as a fraud upon the party who has performed his part, and place him in a situation in which he would not be compensated in damages.

We think that the motion for a nonsuit should have been granted. The judgment, therefore, should be reversed, and a new trial granted, with costs to the appellants to abide the event.

Judgment reversed and new trial granted, with costs to abide the event.

McLENNAN and WILLIAMS, JJ., concur.

SPRING, J. I cannot concur in the opinion of the majority in this case. The trial court has found that the contract was made as claimed by the plaintiff, and has also found as a fact that it has been fully performed by her. The trial court saw the witnesses, and was in a better situation to judge as to their credibility than we, sitting as appellate judges. Unless we are to say that in actions for specific performance a different rule is to prevail, in giving credence to the decision of the trial court, I do not see how we can disturb the judgment in this case. The plaintiff's husband testified explicitly to the contract and its terms. It was definite and certain. It was not unfair. The plaintiff had lived with the Speidels, and as a member of their family, from her childhood, of 6 years, until her marriage, 13 years later. The Speidels had no children, and the plaintiff was treated as a daughter. After her marriage the relations continued affectionate, and like that of parents and a daughter. By the terms of the contract, the whole property of Mrs. Speidel was not to pass to the plaintiff. She left quite an amount of personal property, and this contract related solely to the premises upon which she lived. It is contended that the contract was not fully performed. As I say, the court has found otherwise. The performance was such as any daugh-

ter would render to a mother, and that was what was designed by the agreement. The plaintiff and her husband gave up their intention of going to Boston, where the husband had work at his trade in reliance upon this promise. It was therefore supported at its inception by a good consideration, and its performance added to it The contract was not unjust to the heirs at law or next of kin of the decedent. She left no children, and her nearest collateral relative apparently was not needy. Again, the contract might have been a very burdensome one to the plaintiff. Her foster mother was only about 50 years of age at the inception of the agreement, and if she had lived her allotted time, and had required care and attendance in her old age, she was entitled to it under this agreement. Contracts of this kind, resting in parol, have recently been enforced by this court. Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647. The elements which must exist are that the contract is definite and certain, and capable of enforcement, and founded upon an adequate consideration, and that it be just and fair. This agreement possesses all these requirements.

It is urged that the plaintiff may sue for her services. She was an adopted daughter, and, in order to maintain an action of that character, must prove a contract whereby she was to be compensated for such services. The only agreement which she is able to prove is the one which the court in this action has found, and by the decision of this court that agreement is held to be ineffective. The only remedy is for specific performance of the only contract she ever claims to have made. It often happens that, where an action is brought for specific performance, the court, finding that the agreement was made, but, for some equitable reason, specific performance ought not to be decreed, will award damages in lieu thereof. That is not this case, for specific performance can be decreed, and no equities exist whereby the plaintiff should not strictly have the benefit of her agreement.

The evidence of the witness Myerhoff, who testified that Mrs. Speidel said that Frances (that is, the plaintiff) was going to have all of her property upon her death, shows the intention of the intestate, and also her affection for the plaintiff.

I think the judgment should be affirmed.

HISCOCK, J. (dissenting). I fully agree with the view that a claim of the character involved in this action is to be scrutinized with great care. The decision of every such case must largely be governed by its own peculiar facts. Such careful examination of the evidence in this action seems to me to warrant a recovery. In addition, it must be borne in mind that the trial justice had the very great advantage of seeing and hearing the witnesses as they testified; and it must be assumed that the very valuable impressions and assistance to be derived from this observation were in favor of the decision which he reached. Under such circumstances I am unable to concur with the prevailing opinion in this case, and, for the reasons here and in the memorandum of Mr. Justice SPRING more fully set forth, dissent.