[Civ. No. 4549. First Appellate District, Division Two.—July 16, 1923.]

## EOLINE W. SHAW, Appellant, v. HAZEL HUBBARD KING, as Administratrix, etc., Respondent.

[1] CONTRACTS—LEGAL CONSIDERATION.—An enforceable contract must be founded upon a consideration known to the law.

[2] ID.—OFFER TO CARE FOR SISTER—DEATH PRIOR TO PART PERFORMANCE—DAMAGES—SPECIFIC PERFORMANCE.—An offer or promise to provide for the maintenance of the sister of the promisor for the remainder of her life, in consideration of her removal from another state to this state in order that the promisor might have the comfort and pleasure of her society and companionship, cannot be specifically enforced against the estate of the promisor, where his death occurred prior to her departure from the other state, and there is no showing that she cannot be compensated in damages for the breach of the alleged contract.

[3] ID.—MUTUALITY OF REMEDY—SPECIFIC PERFORMANCE.—A contract to provide for the maintenance of the sister of the promisor for the remainder of her life, in consideration of her removal from another state to this state in order that the promisor might have the benefit of her society and companionship, cannot be specifically enforced, because of lack of mutuality of remedy, where the sister

had not entered upon the fulfillment of her portion of the contract at the time of the death of the promisor.

[4] ID.—DAMAGES—EVIDENCE.—Plaintiff not having shown that she suffered any special damage by reason of her having come to this state in reliance upon her brother's offer or promise to provide for her maintenance for the remainder of her life, and there having been no showing as to how much money she was to receive from her brother and for how long a time, under the terms of the contract, or as to what was the value of the time and attention she was expected to devote to her brother in return therefor, the court could not award her damages for breach of contract.

[5] ID.—OFFER—REVOCATION BY DEATH.—The letters from the brother having constituted but an offer to care for the sister, in consideration for her removal from the other state to this state, that offer was revoked by the death of the brother prior to the sister's acceptance of it by part performance.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louis Goldstone for Appellant.

George Clark Sargent for Respondent.

LANGDON, P. J.—This is an appeal by plaintiff from a judgment against her entered upon granting the motion of the defendant for a nonsuit. The defendant is the surviving wife of Fred C. King, deceased, and also the administratrix of his estate. The plaintiff presented her alleged claim against the estate to the administratrix; it was rejected. She thereupon brought this action, seeking specific performance of an alleged contract with deceased, or failing in that, for damages against his estate for its breach.

[1] It is unnecessary to go into the facts at great length, for the case presents but one question which is answered by a fundamental rule of contract law, i. e., that an enforceable contract must be founded upon a consideration known to the law.

In the present case, the plaintiff and deceased were sister and brother. The brother lived in California and the sister in New York. The letters of the brother to his sister, relied upon by her to establish the alleged contract, as well as the

undisputed testimony of relatives and intimate friends, prove beyond doubt that there was a deep and tender affection between the brother and sister, and that he looked after her and provided for her necessities and comforts with loving care. It is also apparent that the brother planned for years and frequently expressed his purpose to care for his sister during the remainder of her lifetime. He was the president and a large stockholder of an oil company, and a short time before his death the affairs of this company were in the hands of a federal court receiver. During the period of the receivership he wrote to his sister frequently, telling her of the situation and that $1,500,000 would soon be received by the company from the receiver and distributed among its stockholders; that he would then receive a substantial sum of money and would be able to carry out long-cherished plans for her; that he would send her money to come to California, where the climate would improve her health, and that they would spend the remainder of their lives near each other and enjoy the companionship they had known as children. These letters were attached to plaintiff's complaint and indicate, clearly, the generous, kindly spirit of the brother toward his sister. In November, 1920, the receiver paid over to the company the money held by him and deceased received a dividend of fifty cents a share on 50,334 shares of stock in the oil company, and also received additional money from other sources. On November 16, 1920, deceased forwarded to plaintiff his personal check for $300, together with a letter telling her to start for California at once and to stop on the way and see another sister who was ill and to whom he had also sent money.

Plaintiff alleged that after receiving this check she quitted the employment upon which she had previously depended for her livelihood and support and terminated and abandoned her former domicile in New York with the intention of thereafter establishing her residence in California and relying for her permanent future maintenance and support for the remainder of her life upon her brother. Plaintiff left New York on December 14, 1920, without knowledge that her brother had died suddenly three days earlier. This information was communicated by telegraph to friends in the east with whom the plaintiff was living at the time, but they, fearing she would not be able to endure the long rail-

road journey if she knew the truth, concealed the fact from her and she did not learn of her brother's death until she reached San Francisco. Plaintiff is a woman of the age of sixty years, in delicate health and without financial means to provide for her own support and unable to earn her own living.

The testimony of several friends and relatives of the family is undisputed that the brother frequently spoke of his purpose to care for his sister during her entire life; that it was an object ever before him. He stated frequently that he had promised his mother when she was dying that he would care for his sister who had been afflicted with brain fever when a child and thereby incapacitated for solving her own economic problems. His great desire was to have the affairs of the oil company settled so that he might carry out his promise to his mother and enjoy the comfort and society of his sister in California. He had almost accomplished this purpose when the hand of death was laid upon him, thwarting his long-cherished plans.

The trial judge was moved to comment upon the kindly, generous nature of deceased, as evidenced by the letters to his sister and his conduct toward her, and to regret that his estate could not be charged with a moral obligation which he so constantly recognized. We join in those sentiments, but we can find no enforceable contract in the facts proven at the trial.

[2] As previously stated, the plaintiff sought recovery upon two grounds, one by the enforcement of specific performance of the alleged contract to provide for her maintenance for the remainder of her life, and the other for damages for breach of said contract. Viewed as an action for specific performance, the pleading and proof is insufficient for several reasons. There is no showing that the consideration for the alleged contract was adequate; the terms of the alleged contract are too vague to be specifically enforced; there is no showing that the plaintiff cannot be compensated in damages for a breach of the alleged contract. (*Parsons* v. *Cashman et al.*, 23 Cal. App. 298, 301 [137 Pac. 1109, 1111].)

As to the first objection, the contract was evidenced by letters written by the brother to the sister. In one of these letters he expresses the hope that he will soon be able to tell

plaintiff to "stop work and come West and be near us." The same idea is expressed in the other letters. In the last letter he said: "Enclosed find check for $300. I think you had best come at once. I think you had far better put off your visit to Boston until next Summer, when I will be far better prepared financially to send you and spare the money." The letter then continues with directions as to her tickets, etc. The plaintiff started for San Francisco in response to that letter. She alleged, but offered no proof upon the subject, that she had quitted her employment in New York. The only suggestion of any employment by the plaintiff is the references in the letters to her work. But there is no proof that she was working at the time she received the last letter which induced her to leave New York, nor that she gave up her employment because of her brother's offer. On the contrary, the testimony of her friends and relatives offered on her behalf was all to the effect that she was in delicate physical health and was unable to look after herself in the matter of earning a living. So far as the record shows, therefore, there was no consideration given, for the alleged agreement of defendant's intestate, except the journey from New York to San Francisco. Plaintiff offered no evidence that this was any hardship or detriment to her, and the expense of it was paid by her brother. There was no proof that plaintiff had sacrificed any opportunities of any kind in leaving New York for a short time. She never performed any services for her brother and never gave him the comfort and pleasure of her society because he died before she left New York.

A case rather closely in point is *Jaffee* v. *Jacobson,* 48 Fed. 21 [14 L. R. A. 352, 1 C. C. A. 11], where it was held that a failure to perform services called for by the agreement, although due to the death of the party for whom the services were to be performed before the beneficiaries had an opportunity to carry out the agreement, will prevent enforcement of the contract by the beneficiaries.

As to the rule that a contract must be definite before specific performance will be decreed, there is no showing either by the letters relied upon as constituting the contract, nor by the testimony introduced on behalf of the plaintiff as to the approximate amount monthly which the brother contem-

plated allowing his sister. Was it to be $50 a month or $200, as she asks in this action?

Furthermore, this is not a case where the plaintiff gave up years of her life and opportunities for pleasure and profit in order to minister to the needs of her brother, in reliance upon his promise to care for her. In such cases it has been held that damages would not be an adequate compensation for the loss of the opportunities of an entire lifetime, and that the contract would be specifically enforced. There is nothing in the present record to indicate that plaintiff's damages, if any, could not be adequately compensated for at law.

[3] As a further objection to enforcing this alleged contract specifically, there was no mutuality of remedy. A court of equity will refuse to decree the specific performance of an executory contract wherever it creates a duty from the plaintiff of such confidential or personal nature that the court could not have enforced it at the instance of the defendant. After the services have been rendered, however, the reason for the foregoing rule no longer applies, the contract having become mutual in both obligation and remedy. (25 R. C. L., sec. 118; *Sturgis* v. *Galindo*, 59 Cal. 29 [43 Am. Rep. 239].) In the instant case plaintiff contends that in return for her brother's provision for her financial needs during her lifetime, she was to give him the benefit of her society and companionship and to maintain her residence near him so as to make their constant association practicable. As in the case of *Jaffee* v. *Jacobson, supra,* this companionship and association was the real consideration for the contract. The brother could not have enforced this contract against the sister. Equity would not undertake to compel the plaintiff to be her brother's companion in California. She had not entered upon the fulfillment of that portion of the contract at the time of the breach and there was no mutuality of remedy.

[4] We are now brought to a consideration of the legal remedy sought. Plaintiff asks for damages for breach of contract in the event specific performance cannot be had. Apart from the uncertainty of the contract there is no proof of damage in the record. Plaintiff's damage would be the difference between the value of the thing she was to receive and the value of the things she was to give up. How much

money was plaintiff to receive from her brother and for how long a time, under the terms of the contract, and what was the value of the time and attention she was expected to devote to her brother in return therefor? The record is silent upon all of these matters; there was no proof offered.

[5] A further answer to appellant is that, taking her view of the legal situation and regarding the letters of the brother as an offer to the sister which she accepted by part performance when she started upon her journey from New York to San Francisco, a difficulty is presented by the fact that before plaintiff left New York her brother had died. The offer of the brother was revoked by his death before plaintiff's acceptance of it by part performance. (Sec. 1587, subd. 4, Civ. Code.)

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 13, 1923.