## WILSON *v.* LINGON.

1. CONTRACTS—RESCISSION.
   Rescission is remedy properly restricted to cancellation of contracts involving mutual obligations.

2. SAME—SPECIFIC PERFORMANCE.
   Generally, where specific performance would be refused, rescission will be decreed, though rescission is more nearly matter of right than specific performance.

3. VENDOR AND PURCHASER—RESCISSION.
   Failure of vendor to perform his contract is ground for rescission by vendee.

4. SAME—DEFAULT BY VENDORS—OPTION TO VENDEES TO MAKE MORTGAGE PAYMENTS NOT MANDATORY.
   Where land contract provided that vendors should meet payments of principal and interest on mortgage on premises as they matured, default on their part to make such payments gave vendees right to rescind; and it is immaterial that vendees had right, under contract, to make such payments and receive credit therefor on contract.

5. SAME.
   Option to vendees to make payments on vendors' mortgage and receive credit therefor on contract does not impair obligation of vendors' contractual obligation to pay.

6. SAME—VENDORS' OBLIGATION TO MAKE MORTGAGE PAYMENTS MANDATORY.
   Provision in contract that vendors should meet payments of principal and interest on mortgage on premises as they matured is mandatory, although contract gave vendees right to make said payments and receive credit therefor on contract.

7. SAME—VENDEES' OPTIONAL REMEDY NOT EXCLUSIVE—RESCISSION.
   Option to vendees to make payments on mortgage which vendors were obligated to pay, and receive credit therefor on contract, is not mandatory, but permissive; and is not exclusive remedy

---

On right to rescind or abandon contract because of other party's default, see annotation in 30 L. R. A. 64.

to which vendees are by contract restricted, but on vendors'
default vendees have right to rescind, provided said default
was not caused by vendees' default.

8. SAME—DEFAULT BY VENDORS—VENDEES NOT UNDER OBLIGATION
   TO PAY.
   That vendees, on discovering that vendors were in default in
   making payments due on mortgage, elected to rescind, did not
   make it incumbent on vendees to pay additional money to
   vendors which they might not be able to recover.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 29, 1932. (Docket No. 223, Calendar No. 36,087.) Decided October 3, 1932. Rehearing denied December 6, 1932.

Bill by William H. Wilson and another against George C. Lingon and others to rescind a land contract. Decree for defendants. Plaintiffs appeal. Reversed and remanded.

*Denby, Kennedy & Kennedy,* for plaintiffs.

*Maurice Dreifuss,* for defendants.

POTTER, J. Plaintiffs are brother and sister. Defendants Lingon are husband and wife. Prior to entering into the contract which is made the basis of this litigation, plaintiff William H. Wilson had a vendee's interest as beneficiary of a trust of which his sister, Priscilla E. Wilson, was trustee in lots 129 and 130, Pontchartrain Heights Subdivision of part of fractional section 28, town 2 south, range 11 east, commonly known as 7021 Elmhurst avenue, Detroit, Michigan, consisting of the land and a three-story brick building thereon containing 13 apartments with a basement, and garages in the rear. William H. Wilson was also the owner in fee simple of Lot No. 132 of Paterson's Acre Garden Farms Subdivision, Taylor township, Wayne county,

and plaintiff Ida M. Warner owned the south half of lot No. 182 and all of lot No. 183, Meadow Park Addition to the village of Royal Oak, Oakland county, Michigan. Defendants Lingon were the owners of lots 45, 46, 47, and 48, Burns Subdivision of part of lot 70, lying north of Dix Road of subdivision of private claim 60, Detroit, Wayne county, Michigan, subject to a trust mortgage in the sum of approximately $90,000 of unpaid principal and interest given to secure a bond issue and held by the Guaranty Trust Company of Detroit, dated December 1, 1925. Defendants Lingon also owed on the Burns Subdivision property $2,290.31 city taxes for 1928, $590.86 State and county taxes, $861.20 for special assessments, a total of $3,742.37 of taxes and assessments, and also $1,285 of unpaid premium for fire insurance. Plaintiffs purchased the Burns Subdivision property, above described, of defendants Lingon June 27, 1929, for $1 and other valuable considerations, namely, the transfer of plaintiffs' interests in the lands and premises above described to the defendants Lingon, and the agreement to pay $115,000 balance, to be payable in instalments of not less than $1,050, July 15, 1929, and a like amount on the 15th day of each and every month thereafter. By the contract of purchase plaintiffs agreed to assume $1,210.43 due to the General Motors Acceptance Corporation for frigidaires. The contract provided that if default was made by the purchaser in the payment of any tax, assessment, or insurance premium, the seller could pay such tax, assessment, or premium, and the sum paid therefor should be a further lien on the land payable by the purchaser to the seller forthwith with interest at seven per cent. The contract further provided:

"If the title of the seller is evidenced by land contract or now or hereafter incumbered by mortgage, the seller shall meet the payments of principal and interest thereon as they mature and produce evidence thereof to the purchaser on demand and in default the purchaser may pay the same, which payments shall be credited on the sums matured or first maturing hereon with interest at seven per cent. per annum."

The bill of complaint asks a rescission and cancellation of this contract. It alleges it was defendant Lingon's duty to pay the taxes and assessments upon the property, and the contract provided plaintiffs should have possession so long as they were not in default. It alleges that at the time of the trade plaintiff Wilson owed $600 to the Kelvinator Detroit Company for refrigeration equipment in his apartment and defendants Lingon owed about $1,300 to the General Motors Acceptance Corporation for refrigeration equipment in their apartment; that it was agreed each party was to pay the balance due upon the refrigeration equipment in the property which they received; that plaintiffs had paid $600 on the refrigeration equipment in the property which they received by the contract and defendants Lingon had paid nothing; that plaintiffs had paid $1,285 of insurance premiums for insurance on the property received; had rebuilt two furnaces therein and repaired other furnaces; that they had redecorated 11 of the apartments; that they had also, upon taking possession of the property, paid to defendants Lingon $500 to adjust some unsettled accounts and had paid a $400 real estate commission; that after plaintiffs had been in possession for some time, they first learned defendants Lingon were in arrears in the payments due upon the trust mortgage in the sum

of $8,350; that plaintiffs were told by the trust company under the trust mortgage the past-due payments due thereon, together with the past-due taxes, must be paid promptly or it would exercise its rights under the trust mortgage and take possession of the real estate and collect the rent, income, and profits therefrom. Plaintiffs claim they could not safely pay the taxes due upon the premises acquired by them, or make any further payments upon the contract because it was likely to be taken from them by the mortgagee under the trust mortgage by reason of defendants Lingons' default, and the trust company did, on May 21, 1930, take possession of the real estate purchased by plaintiffs and serve notice upon the tenants occupying the same to pay the rent to the trust company, and thereafter the plaintiffs could not collect any rent therefrom. Plaintiffs claim they were evicted by the trust company under the mortgage by reason of the wrongful acts and default of the mortgagors, defendants Lingon, the trust company taking possession of the premises and collecting the rents, income, and profits therefrom. Plaintiffs prayed for a rescission of the contract, accounting, and lien upon the defendants Lingons' premises for the amount of the payments made by them, for a temporary and permanent receiver, and for a temporary and permanent injunction restraining defendants Lingon from transferring or incumbering the property traded to them, and for other relief. From a decree for defendants, plaintiffs appeal.

It was stipulated defendant Costas, to whom defendants Lingon had conveyed part of the property received from plaintiffs, would abide any decree entered in favor of either plaintiffs or defendants. Vendors' title was subject to real estate mortgage

of $100,000 upon which approximately $90,000 was due. Plaintiffs, upon discovering defendants Lingon were in default in the payments due upon this mortgage to the extent of $8,350 and their rights as vendees were thereby likely to be at once jeopardized and ultimately lost, refused to make further payments to vendors unless vendors complied with the covenants in the contract, and made the payments due upon the real estate mortgage, together with interest thereon. The contract provided:

"That if the title of the seller is * * * incumbered by mortgage, the seller shall meet the payments of principal and interest thereon as they mature and produce evidence thereof to the purchaser on demand."

Defendants being unable to make such payments and relieve themselves of default and plaintiffs of the danger of immediate loss of their vendees' interest, plaintiffs elected to rescind the contract, to recover the property conveyed by them to defendants, offering to convey back to defendants the property which they had purchased on land contract and received from them. This they had a right to do.

Rescission is a remedy properly restricted to the cancellation of contracts involving mutual obligations. Black on Rescission and Cancellation (2d Ed.), § 3. In general, where specific performance would be refused, rescission will be decreed (*Kirby* v. *Harrison,* 2 Ohio St. 326 [59 Am. Dec. 677]), though rescission is more nearly a matter of right than specific performance. Black on Rescission and Cancellation (2d Ed.), § 12. Failure of the vendor to perform his contract is a ground for rescission by the vendee. *Skillern's Exrs.* v. *May's Exrs.,* 4 Cranch (8 U. S.), 137. Plaintiffs' right to rescind was perfect. *Seymour* v. *Detroit Copper & Brass*

*Rolling Mills*, 56 Mich. 117; *City of Grand Haven* v. *Grand Haven Waterworks Co.*, 99 Mich. 106. If defendants were asking specific performance, then performance on their part would be a condition precedent. Plaintiffs ask rescission for the failure of defendants to perform their covenant to meet the payments of principal and interest on the mortgage on the premises as they matured. Defendants were in default. As a part of the contract they agreed to meet the payments on the mortgage thereon. There was a failure on their part to perform. It is immaterial that plaintiffs, by the payment of a sum substantially in excess of the amount agreed to be paid, could have protected themselves from mortgage foreclosure resulting as a consequence of defendants' failure to perform. Plaintiffs were under no obligation to carry out and perform a contract which they did not enter into. Why insert a provision in the contract that the seller meet the payments of principal and interest on the mortgage on the premises as they matured if the only remedy of vendee was to meet the payments of principal and interest himself and apply the amount paid in reduction of the contract price? Vendors will not voluntarily pay out money when it is immaterial whether they pay or not. Why insert this clause in the contract at all if it is not to be recognized and enforced? An option to vendees does not impair the obligation of vendors' contractual obligation to pay. When defendants defaulted in the terms of the contract, plaintiffs at once had a right of action. The court cannot make a new contract for the parties. The contract was mandatory in its requirement defendants should meet the payments due and to grow due on the mortgage. Plaintiffs were, by the contract, given the right to pay on the mortgage. This right was not mandatory but permissive. It was not

an exclusive remedy to which plaintiffs were by contract restricted. The parties did not provide defendants should make the payments on the mortgage and at the same time leave it optional whether they should make them or not. In *Ong* v. *Campbell,* 6 Watts (Pa.), 392, the court, by Chief Justice Gibson, held that a vendor, who had covenanted to make payments on a mortgage, was not entitled to specific performance of a contract of sale when he had not done so. By the same reasoning, failure of a vendor to make payments on a mortgage on premises sold gives the vendee a right to rescind, because vendee may rescind for a breach of contract by vendor.

Defendants are bound by the written contract and their covenant to pay the amount due and to grow due upon the mortgage. This default upon the part of vendors was not due to vendees' failure to make the payments falling due after they discovered this default. Vendors' default had occurred before plaintiffs' discovery and failure to pay. That plaintiffs, upon discovery of the extent of defendants' default upon the mortgage, elected to rescind, did not make it incumbent upon plaintiffs to pay additional money to defendants which they might not be able to recover. Under the facts, plaintiffs are entitled to a decree. In coming to this conclusion we do not pass upon a case where the vendee owed an amount in excess of that due from the vendor on the mortgage and the default of the vendor was due to that of the vendee. The decree of the trial court will be reversed, with costs, and a decree of rescission entered and the cause remanded to the trial court for an accounting between the parties; plaintiffs to have a lien for the amount due them, as prayed.

CLARK, C. J., and McDONALD, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.