12

## TUCKER et al. v. WARFIELD.
### No. 7417.

United States Court of Appeals for the District of Columbia.

Decided March 10, 1941.

Rehearing Denied April 18, 1941.

Belford V. Lawson, Jr., George A. Parker, and Horace O. Pollard, all of Washington, D. C., for appellants.

Bernard M. Chernoff and Lester Wood, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

**MILLER, Associate Justice.**

The trial judge found as the facts of this case: "That on May 6, 1936, the plaintiff, a colored woman seventy-five years of age, being the owner in fee simple of parts of Lots 33 and 34 in William S. Roose's subdivision of Lots in Square 192 in the District of Columbia, subject to Deed of Trust of $3,700.00, conveyed said property to the defendants in consideration of the valuable aid being given by the defendants and in consideration of their promise and agreement to provide and furnish the plaintiff with the necessities of life including living quarters during the natural life of the plaintiff and to provide the plaintiff with a decent and Christian burial after the demise of the plaintiff. That said premises is improved by private residence known as 1502 S Street, N. W., occupied by the plaintiff with rooms or apartments rented or sublet to several roomers or tenants. That on May 28, 1936, after differences had arisen between plaintiff and the defendants a supplementary agreement was entered into by them confirming the deed of May 6, 1936 and making certain additional provisions and modifications thereof. That on, to-wit, June 15th, 1936, the defendants undertook to move from the residence which they owned and occupied and had agreed to rent to a prospective tenant, and to take up their residence with the plaintiff in residence 1502 S Street, N. W., but that the plaintiff refused them admission and from that time none of the parties to this suit have done anything further in the performance of the provisions of the deed and agreement heretofore mentioned. That the defendants prior to the execution of the said deed and subsequent thereto up to June 15th, 1936, advanced $300.00 cash for the use and benefit of the plaintiff and they also sustained unliquidated damages which the Court has ascertained and fixed at $200.00, relying upon the deed and agreement between the parties thereto."

He concluded as a matter of law: "That the deed dated May 6, 1936 and the agreement dated May 28, 1936, are vague and indefinite; are inequitable and are incapable of performance or enforcement and therefore should be declared nul [sic] and void and of no effect. That the defendants in equity and justice are entitled to recover from the plaintiff the sum of $500.00 with interest thereon of six per centum and that the same should be declared and made a lien upon the real estate described in said deed subject to the first deed of trust on said premises." Judgment was entered accordingly.

█ Only two questions are presented on this appeal: 1. Are the deed bearing date of May 6, 1936, and the contract bearing date of May 28, 1936, so vague, indefinite and inequitable as to be incapable of performance or enforcement? 2. Did the court on the case stated, err in vacating the deed dated May 6, 1936? The answer to the second question depends largely upon the first. Whether the court should have exercised the discretionary power which it possesses to cancel the deed because of fraud, illegality or mistake, may well depend upon whether the deed and contract were incapable of performance or enforcement because they were vague, indefinite and inequitable.[1]

Except for that paragraph of the deed which sets out a special consideration for the conveyance, there is nothing to distinguish it from the ordinary short form deed which is in common use; or to support the conclusion that it is vague, indefinite, inequitable or incapable of performance or enforcement. That paragraph reads as follows: "This conveyance is further made in consideration of the valuable aid being given by the grantees herein and in consideration of their promise and agreement to provide and furnish me the necessities of life, including living quarters, during the remainder of my natural life and to provide me a decent and christian burial after my demise."

█ Substantial difficulties are presented by this provision. Not only does it involve uncertainty concerning the life of appellee, but also as to the standards which are to be used in determining the necessities of life and the place and quality of living quarters.[2] Moreover, as the speci-

[1] Cf. Kirby v. Harrison, 2 Ohio St. 326, 333, 59 Am.Dec. 677, 681; Gillette v. Metzgar Register Co., 243 Mich. 48, 58, 59, 219 N.W. 644, 647; Callanan v. Keesville, A. C. & L. C. R. Co., 131 App. Div. 306, 115 N.Y.S. 779, modified, 199 N.Y. 268, 92 N.E. 747; Wilson v. Lingon, 260 Mich. 134, 244 N.W. 426. See Thompson v. Jackson, 3 Rand. 504, 24 Va. 504, 15 Am.Dec. 721; 1 Black, Rescission and Cancellation (1916) § 12.

[2] Cf. Braun v. Ochs, 77 App.Div. 20, 23, 25, 79 N.Y.S. 100, 102, 103; Ryan v.

fied consideration is to consist in large part of personal services, specific performance is impossible.[3] The difficulties inherent in this uncertain and indefinite paragraph became real, immediately, when performance was attempted by the parties. This is evidenced by the fact that the deed was no more than three weeks old before it became necessary to call for the assistance of a lawyer to draw an agreement which would spell out the respective rights, powers and privileges of the two women who were parties to it. That agreement, which bears date of May 28, 1936, consists of the following paragraphs:

"That in consideration of the sum of One Dollar ($1.00) in hand paid by the parties of the second part to the party of the first part, the receipt of which is hereby acknowledged, and for other valuable considerations, it is hereby agreed as follows:

"1. That this agreement is confirmatory of the conveyance by deed of premises No. 1502 S Street, Northwest, by the party of the first part, Phoebe Warfield, to the parties of the second part, Ivan Tucker and Bessie J. Tucker, his wife, and is to in nowise be construed to alter, change. or amend the same in any respects whatsoever.

"2. That it is understood and agreed by the parties hereto that the party of the first part, Phoebe Warfield, shall have the privilege of doing her own cooking, washing, ironing and of attending to any or all of her other personal affairs or needs if and when she so desires and is able so to do.

"3. The parties of the second part hereto promise and agree to give the party of the first part the sum of Six Dollars Fifty Cents ($6.50) monthly which the party of the first part hereby agrees and promises to use in the payment of the premium on her life insurance amounting to $3.27 per month and to use the balance for the purpose of taking care of her church dues, purchase of toilet articles and such other personal necessities that may be needed by her from time to time.

"4. It is specifically understood and agreed between the parties hereto that Bessie J. Tucker shall have full control of premises No. 1502 S Street, Northwest, during the life of this agreement and the natural life of the party of the first part, and to that end shall be charged with the responsibility of collecting all rents from roomers or rooms, making the necessary repairs for the purpose of keeping the premises in a tenantable condition, paying all bills, including fire insurance, taxes, amounts due on loan secured on premises, telephone bills, electric light bills, gas bills, laundry bills, fuel bills and any and all other expenses incident to the maintenance and operation of the said premises and to exercise full and absolute control over the same free from molestation through or by orders of the party of the first part."

But the agreement, instead of resolving the difficulties, merely added to them. At this point the impossibility of specific performance became obvious.[4] In fact, the trial judge certainly was justified in holding to be vague and indefinite an instrument which contains in one paragraph the uncompromising specification that one woman shall exercise *full and absolute control over the premises free from molestation through or by the orders of the other,* and in another paragraph an equally uncompromising specification that the other woman shall have, in the same premises, the privilege of doing her own *cooking, washing, ironing* and of *attending to any or all of her other personal affairs or needs if and when she so desires.* In no sense can it be said that this contract represented a meeting of the minds. It seems almost

Summers, 81 Ind.App. 225, 142 N.E. 879; Shakespeare v. Markham, 10 Hun, N.Y., 311, 322–324, affirmed, 72 N.Y. 400; Owens v. McNally, 113 Cal. 444, 451, 452, 45 P. 710, 712, 33 L.R.A. 369; Shaw v. King, 63 Cal.App. 18, 21, 22, 218 P. 50, 51, 52; Brown v. Freese, 28 Cal.App.2d 608, 619, 83 P.2d 82, 87. Cf. also, Brown v. Sutton, 129 U.S. 238, 245, 9 S.Ct. 273, 32 L.Ed. 664. But cf. Stillings v. Stillings, 67 N.H. 584, 587, 42 A. 271, 272.

3 Cf. Restatement, Contracts (1932) § 379: "A promise to render personal service or supervision will not be specifically enforced by an affirmative decree."; Roller v. Weigle, 49 App.D.C. 102, 104, 261 F. 250, 252.

4 See Restatement, Contracts (1932) § 371: "Specific enforcement will not be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and to the harm to be suffered in case it is denied."

the inevitable outcome that, when the agreement was less than three weeks old, the two women, each of whom apparently attempted to occupy the time-honored position of queen-bee in this domestic scene, fell into violent disagreement; the lawyer who attempted to represent both of them advised the grantor, appellee, to lock the door of the house against the appellant; and "from that time none of the parties to this suit have done anything further in the performance of the provisions of the deed and agreement * * *." This is a situation highly appropriate for equitable interposition and cancellation.[5] Moreover, it is apparent that, under the circumstances, the trial judge properly read the two instruments together in determining whether the equitable relief prayed for should be granted.[6] In spite of its own denial of purpose to alter, amend, or change the deed, the obvious purpose of the agreement was to accomplish just that result, by interpreting and particularizing the vague and uncertain consideration paragraph of the deed.

■ It is equally apparent that when the two instruments are read together the result is just what the trial judge described, i. e., vagueness and indefiniteness of such nature as to make impossible performance or enforcement, and to warrant equitable relief, from the deed, not only for that reason, and by virtue of the discretionary power previously referred to,[7] but because of the necessity of resorting to extrinsic evidence, which in turn shows the invalidity of the deed.[8]

Under the circumstances, it was well within the power of the trial court to declare them null, void and of no effect. This is particularly true in such a case as the present, in which the advantage in interpretation should be given to the grantor, when the consideration for the grant is that of care during old age;[9] especially when the contract has not been performed by the grantee;[10] whether because of the latter's deliberate or negligent failure to act, or because—as in the present case—of discord and strife which makes performance impossible.[11] That there was mistake, inequity and incapability of performance we have no doubt.

■ The finding by the trial court that appellants suffered unliquidated damages of $200 can be sustained by evidence in the record showing services rendered by appellants to appellee before the execution of the deed. Upon this theory it was proper for the court to declare in favor of appellants, a lien on the real estate to secure this amount—as well as the $300 advanced to appellee—in order to secure justice to all the parties; even though at the same time it ordered cancellation of the deed.

Affirmed.

5 Cf. Williams v. United States, 138 U.S. 514, 517, 11 S.Ct. 457, 34 L.Ed. 1026; Langley v. Irons Land & Development Co., 94 Fla. 1010, 1018, 114 So. 769, 771; Glenn v. Birmingham, 223 Ala. 501, 137 So. 292; Murray v. Sanderson, 62 Wash. 477, 114 P. 424.

6 Cf. Crowell v. Gould, 68 App.D.C. 297, 298, 96 F.2d 569, 570; Bruer v. Bruer, 109 Minn. 260, 267, 123 N.W. 813, 815, 28 L.R.A.,N.S., 608; Winke v. Olson, 164 Wis. 427, 432, 160 N.W. 164, 166.

7 See note 1, supra.

8 Shanklin v. Boyce, 275 Mo. 5, 16, 204 S.W. 187, 188.

9 Chambers v. Roper, 119 W.Va. 338, 342, 343, 193 S.E. 570, 572; Tuttle v. Burgett's Adm'r, 53 Ohio St. 498, 504, 505, 42 N.E. 427, 429, 30 L.R.A. 214, 53 Am.St.Rep. 649; Bruer v. Bruer, 109 Minn. 260, 265, 123 N.W. 813, 814, 28 L.R.A.,N.S., 608. Cf. Allen v. Allen, 204 Minn. 395, 397, 283 N.W. 558, 560; Widen v. Widen, 33 Ohio App. 37, 168 N.E. 477, 478.

10 See Stephens v. Daly, 49 App.D.C. 389, 266 F. 1009; O'Ferrall v. O'Ferrall, 276 Ill. 132, 114 N.E. 561.

11 Allen v. Allen, 204 Minn. 395, 283 N.W. 558.