Apostolos K. KAKAES, Appellant,

v.

GEORGE WASHINGTON
UNIVERSITY,
Appellee.

No. 99–CV–1756.

District of Columbia Court of Appeals.

Argued Jan. 3, 2002.
Decided Jan. 31, 2002.

Thomas J. Gagliardo, for appellant.

Michael A. Dymersky, Washington, DC, for appellee.

Before SCHWELB, FARRELL, and REID, Associate Judges.

SCHWELB, Associate Judge.

This case is before us for the second time. *See Kakaes v. George Washington Univ.,* 683 A.2d 128 (D.C.1996) *(Kakaes I).* It arises from the refusal of George Washington University (the University) in 1993 to award tenure to the plaintiff, Professor Apostolos K. Kakaes, who had been on a "tenure accruing" track at the University since his appointment in September 1987 as an Assistant Professor in the Department of Electrical Engineering and Computer Science (EECS). Following our remand of the case to the Superior Court in *Kakaes I,* a non-jury trial was held before that court. After hearing extensive testimony which established that the University had failed to provide Dr. Kakaes with timely notice, as required by the Faculty Code, of its decision to deny tenure, and after further proceedings relating to the issue of relief, the judge declined to order the University to grant Dr. Kakaes tenure. The judge held instead that Kakaes was entitled to an award of damages in the amount of $75,018, as well as costs and interest. Dr. Kakaes appeals, contending that the contract between the parties required the University to grant him tenure and that the amount of damages awarded by the judge was inadequate. We affirm.

### I.

Most of the historical facts relevant to the dispute between Dr. Kakaes and the University are set forth in our opinion in *Kakaes I.* Section IV.A.3.1.c of the University's Faculty Code, which constitutes the contract between the parties, *see Kakaes I,* 683 A.2d at 129 n. 1, provides in pertinent part that

> [a] faculty member of the rank of assistant professor or higher who will not be granted tenure at the end of the final year of his or her maximum term of appointment shall be so notified in writing no later than June 30 preceding the year in which his or her appointment will expire.... Any such faculty member who is not so notified shall acquire tenure at the end of the term.

*Kakaes I,* 683 A.2d at 130. On June 28, 1993, the University's vice president, Roderick French, wrote a letter[1] to Dr. Kakaes advising him that "you will not be granted tenure at the conclusion of your current appointment." *Id.* at 131. In the same letter, however, Vice President French further advised Dr. Kakaes:

> The President and I are in the process of transmitting the report of the Executive Committee to the Board of Trustees for its consideration. You will be notified of the outcome as soon as possible.

*Id.* In a separate letter written on the same date to the Chairman of the EECS department, Vice President French wrote that

---

1. Professor Kakaes received the letter on June 30, 1993.

[b]y so informing [Dr. Kakaes], the question of [his] ultimate tenuring or termination remains to be resolved.

On October 22, 1993, Dr. Kakaes brought suit against the University for breach of contract, alleging that he had not been provided the timely notice required by the Faculty Code of the decision to deny him tenure.[2] The University filed a motion for summary judgment, claiming that Vice President French's letter of June 28, 1993, constituted the notice contemplated in the Faculty Code. The judge who was then assigned to the case granted the University's motion. On appeal, however, this court reversed, holding that an impartial trier of fact could reasonably find that the University had not complied with the Faculty Code, and that summary judgment was not warranted. *Kakaes I,* 683 A.2d at 135–36. We remanded the case to the trial court for further proceedings consistent with our opinion.

On remand, as we have noted, a different trial judge found that the University had breached its contract with Dr. Kakaes, but she declined to order the University to grant him tenure. This appeal followed.

## II.

■ Dr. Kakaes relies on the provision of the Faculty Code quoted at page 2, *supra,* which states, in pertinent part, that if timely notice has not been given, then "[a]ny such faculty member who is not so notified shall acquire tenure at the end of the term." Kakaes contends that the contract specifies the remedy for its breach—namely, the award of tenure—and that, by what he considers the plain language of

the contract, he is entitled to specific performance, and therefore to tenure. We do not agree.

■ We note in the first instance that the provision that the faculty member "shall acquire tenure at the end of the term" need not necessarily be construed as specifying a remedy. A reasonable alternative reading is that the University has contractually obligated itself to grant tenure in such cases, but that the contract does not identify the relief available to a plaintiff in the event that the University breaches that obligation. Under this construction of the Faculty Code, the trial judge would be entirely justified in awarding monetary damages rather than ordering the University to award Dr. Kakaes tenure. It is "axiomatic" that equitable relief will not be granted where the plaintiff has a complete and adequate remedy at law. *District of Columbia v. Wical Ltd. P'ship,* 630 A.2d 174, 184 (D.C.1993) (quoting *Marshall v. District of Columbia,* 458 A.2d 28, 29 (D.C.1982)); *accord, District of Columbia v. N. Washington Neighbors, Inc.,* 336 A.2d 828, 829 (D.C.1975) (per curiam). Dr. Kakaes has not shown why damages would not provide him with full and complete relief, and at least in the absence of a provision specifying an equitable remedy, award of legal relief is the entirely appropriate norm.

But even if the contract is construed as specifying a grant of tenure as the remedy for its breach,[3] the result will not be different. The trial judge addressed this issue in some detail:

> The plaintiff is not entitled to be reinstated as a faculty member at GW, nor

---

**2.** On February 10, 1994, while Dr. Kakaes' suit was pending, the Board of Trustees voted to deny him tenure.

**3.** This appears to be the trial judge's construction of the contract, and the University does

not appear to have explicitly challenged it. *See also Kakaes I,* 683 A.2d at 136 n. 10, deferring as premature the question whether Dr. Kakaes would be entitled to specific performance.

is he entitled to the granting of tenure. While plaintiff relies upon Article IV. A.3.1.c. of the Faculty Code, which the court found had been breached, as support for his claim to a position as a tenured professor, plaintiff's argument ignores a substantial body of law disfavoring such a remedy, that is, enforcement of a personal service contract, particularly in the university employment area. *Greene v. Howard Univ.*, 271 F.Supp. 609, 615 (D.D.C.1967), *aff'd in pertinent part,* [134 U.S.App.D.C. 81,] 412 F.2d 1128 (D.C.Cir.1969) ("A contract to hire a teacher may not be enforced by specific performance."). *See also Howard Univ. v. Best,* 547 A.2d 144, 146–47, 154 n. 10, 157 (D.C.1988); *Tucker v. Warfield,* [73 App.D.C. 278, 280–81 & n. 3,] 119 F.2d 12, 13–14 & n. 3 (D.C.Cir.1941). . . . "It would be intolerable for the courts to interject themselves and to require an educational institution to hire or maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ." *Greene v. Howard Univ.,* 271 F.Supp. at 615. Indeed, specifically addressing the issue raised in this case, the D.C. Court of Appeals echoed this view in *Howard Univ. v. Best, supra:* "The requirement for clear and satisfactory proof of the custom and practice of a University, in determining the reasonable expectations of the parties, reflects public policy concerns that indefinite tenure not occur by default." 547 A.2d at 154. *See also Cusumano v. Ratchford,* 507 F.2d 980, 986 (8th Cir.1974), *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). ("It cannot serve the public welfare or promote the best interests of the University or its professional staff to have a body of teachers . . . *the permanent tenures of whom rest upon administrative*

*neglect or oversight . . .")* (emphasis added).

(Footnotes omitted.)

■■■■ Our review of the trial judge's decision not to require the University to grant Dr. Kakaes tenure is deferential. "Specific performance is an extraordinary equitable remedy, the denial or granting of which is within the sound and informed discretion of the trial court." *Drazin v. Am. Oil Co.,* 395 A.2d 32, 34 (D.C.1978) (citations and internal quotation marks omitted). The judge's discretion extends to the denial of specific performance even where, as Dr. Kakaes alleges here, the parties have provided in their contract for a particular remedy. As one commentator has written under the heading *Provisions For Specific Relief Are Not Binding,*

> [t]he Second Restatement of Contracts maintains that parties to a contract cannot vary by agreement the requirement that damages be inadequate in order to obtain equitable relief. Supporting this position are numerous opinions in which courts have stated that a clause in a contract providing for specific performance or an injunction does not by itself bind a court to grant the agreed remedy.

EDWARD YORIO, CONTRACT ENFORCEMENT: SPECIFIC PERFORMANCE AND INJUNCTIONS, § 19.2.1, at 441 (1989) [hereinafter CONTRACT ENFORCEMENT] (footnotes omitted). It is true that there has been some scholarly criticism of the courts' reluctance to grant specific performance where there is an adequate remedy at law; "[some] commentators argue that the parties to a contract are in a better position than a judge to determine the remedy that serves their respective interests most satisfactorily." CONTRACT ENFORCEMENT, *supra,* § 19.2.2, at 442 (footnote omitted). We agree in principle that

[i]ndividuals usually benefit when left free to maximize their own interests in negotiating the terms of a contract. But *the principle of equitable discretion rests on the premise that courts ought to consider and reflect other interests in devising a system of contract remedies.*

§ 19.2.3, at 444 (emphasis added; footnotes omitted).

In the present case, we agree with the trial judge that there is a public interest in avoiding the grant of tenure by default. Administrative errors and oversights should not result in a tenured appointment for a person whom the responsible University officials consider unsuitable to receive it. Generally speaking, in the words of Judge Holtzoff, "[a] contract to hire a teacher may not be enforced by specific performance." *Greene, supra,* 271 F.Supp. at 615. We therefore conclude that the trial judge did not abuse her discretion in declining to require the University to grant tenure to Professor Kakaes.[4]

### III.

■ Turning to the issue of damages, the trial judge first noted that the University's failure to provide Dr. Kakaes, prior to June 30, 1993, with a final decision as to tenure left him "with insufficient time, after learning for certain that his job was ending, to secure another position." It was for this harm, according to the judge,

that Dr. Kakaes was entitled to receive damages.[5] The judge continued:

In light of these circumstances and the nature of the damages evidence presented at trial by plaintiff, the court finds that plaintiff has only proven that he is entitled to an award for the actual reduction of income from GW which plaintiff suffered in 1994—$38,459.00 (as his position ended on May 30, 1994 and he did not receive a continued GW salary for the latter half of 1994),—and in the first half of the next year, 1995, the first year after he was actually given a legally sufficient notice of the university's decision—$36,599.00. Because of the plaintiff's choice to pursue non-academic employment thereafter, and the increased earnings from his extremely lucrative business endeavors after leaving GW, the court has determined that he is not entitled to any award for later years of lost GW employment. Instead, the court has determined that its award of damages must be limited to the amount necessary to make the plaintiff whole, and to place him in the same position he would have been in had GW not breached the notice provision of the code. *See Rowan Heating—Air Conditioning—Sheet Metal, Inc. v. Williams,* 580 A.2d 583, 585 (D.C.1990). Nor is plaintiff entitled to any award of attorneys' fees, as he has failed to establish that the university's defenses in this case were presented in bad faith. *See e.g., Cahn v. Antioch Univ.,* 482 A.2d 120, 132–33;

---

4. We agree with the trial judge that *"Farrington v. School Committee of Cambridge,* 382 Mass. 324, 415 N.E.2d 211 (1981) is distinguishable as it involved a *statutory* guarantee that automatically afforded a teacher tenure after three years unless timely notice was given that she would not be employed in the following year." When, as in *Farrington,* the legislature has mandated a specific remedy, a court is not free to ignore the statutory command.

5. The judge correctly stated that "[t]he uncertainty of plaintiff's position pending the decision of the Board [of Trustees] was a focus of the Court of Appeals' ruling reversing the trial court's earlier grant of summary judgment for the defendant." *See Kakaes I,* 683 A.2d at 133.

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). (Footnotes omitted.)

Dr. Kakaes testified on his own behalf and attempted to "compare[ ] what my actual income was to what my actual income would have been had I been [at the University]." Dr. Kakaes presented no expert testimony, and the trial judge expressed considerable skepticism regarding Kakaes' own credibility as a witness. The judge, as the trier of fact, was free "to either credit or disregard [Dr. Kakaes'] opinion as to [his] calculation of damages." [6] *Columbus Props., Inc. v. O'Connell,* 644 A.2d 444, 448 (D.C.1994).

We recognize that the predicate for denying equitable relief to Dr. Kakaes was that he had a full and adequate remedy at law. Nevertheless, the burden was on him to prove the extent of his damages. His failure to present expert testimony was problematical, for "the task of projecting a person's lost earnings lends itself to clarification by expert testimony because it involves the use of statistical techniques and requires a broad knowledge of economics."

*Hughes v. Pender,* 391 A.2d 259, 262 (D.C. 1978). *See also Croley v. Republican Nat'l Comm.,* 759 A.2d 682, 690 (D.C.2000) (citations omitted). "[T]he decision whether or not to ... require[ ] expert testimony is within the discretion of the trial court, whose ruling should be sustained unless clearly erroneous." *District of Columbia v. Davis,* 386 A.2d 1195, 1200 (D.C.1978). Without expert testimony, the trial judge was unpersuaded by the plaintiff's lay testimony, and we cannot say that her findings were clearly wrong. Accordingly, we conclude that Dr. Kakaes has failed to demonstrate any reversible error on the part of the trial judge with respect to the quantum of damages.

## IV.

For the foregoing reasons, the judgment of the trial court is *Affirmed.*

---

**6.** The court wrote:

Plaintiff's evidence of economic damages was limited, due, in part, to his failure to offer an economic expert to substantiate his claim. *See Hughes v. Pender,* 391 A.2d 259, 262–63 (D.C.1978); *District of Columbia v. Barriteau,* 399 A.2d 563[, 568–69] (D.C. 1979). Further, to the extent that the plaintiff himself was the only witness on the damages issue, plaintiff's proof was suboptimal from the perspective of the court's evaluation of his testimony as somewhat evasive on the income issue. Although plaintiff is correct in noting that expert testimony is not always needed to prove damages, *Steinkamp v. Hodson,* 718 A.2d 107, 113–14 (D.C.1998), plaintiff bears the ultimate burden of persuading the trier of fact as to the amount of damages. *See Consumers United Insur. Co. v. Smith,* 644 A.2d 1328, 1344 [n. 21] (D.C.1994); *Hemminger v. Scott,* 111 A.2d 619[, 620] (D.C. 1955).