Morris A. LOCKHART, Appellant,

v.

Maxine Bethel CADE, Appellee.

No. 96–CV–1274.

District of Columbia Court of Appeals.

Submitted Oct. 22, 1998.
Decided March 4, 1999.

Solaman G. Lippman, Richard H. Semsker, and Shannon M. Salb, Washington, DC, were on the brief for appellant.

No brief was filed on behalf of appellee.

Maxine Bethel Cade entered an appearance pro se.

Before TERRY and REID, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge:

Appellant seeks reversal of an order dismissing his legal malpractice action for failure to prove liability. He argues that the entry of a default against appellee established liability, and that the only remaining issue before the trial court was the amount of damages which he was entitled to recover. We agree with appellant, reverse the order of dismissal, and remand the case for further proceedings on the sole issue of damages.

# I

## A. *Background*

Appellant Lockhart was employed as a police officer with the Metropolitan Police Department (MPD) for approximately twenty-one years. While he worked at the Police and Fire Clinic as a drug screening manager, one of his assigned duties was to notify the police department's Internal Affairs Division (IAD) whenever a urine specimen submitted by a police applicant tested positive for a controlled substance. Following standard procedures, Lockhart reported to IAD the positive results of a urinalysis test submitted by an applicant. Thereafter a second urinalysis yielded a negative reading, and the applicant was hired.

Mr. Lockhart's referral of the test results to IAD apparently displeased his supervisor, Inspector Winston Robinson. As a result, Lockhart was directed to give a written explanation of his reasons for informing IAD of the police applicant's positive test results. After he submitted his explanation, IAD looked into the matter and found that Lockhart had followed the correct procedures. Inspector Robinson was later transferred to a non-supervisory position.[1]

After Robinson was transferred, he and other supervisors began to harass Lockhart and initiated an IAD investigation of him in retaliation for what he had done. Although the IAD investigation cleared him of any wrongdoing, Mr. Lockhart nevertheless elected to retire from the police department. Soon thereafter he applied for a management analyst position at the United States Department of Commerce. In response to the Department's reference checks, some of his past supervisors at MPD stated that Lockhart was a "marginal performer ... was not a team player, that he lacked good judgment, and that he was certainly not qualified as an analyst." As a result, Mr. Lockhart was not hired by the Department of Commerce.

On August 13, 1992, Mr. Lockhart hired Maxine Cade, an attorney, to file a wrongful discharge and defamation action against the District of Columbia. Mr. Lockhart paid Ms. Cade $10,000 as a retainer. On October 6, 1992, Ms. Cade filed a complaint in the Superior Court alleging defamation, intentional infliction of emotional distress, and harassment, naming as defendants the Mayor, the Chief of Police, and two police department employees (but not the District of Columbia). The defendants filed a motion to dismiss the complaint, which was granted on July 29, 1994. The court ruled that Mr. Lockhart had failed to exhaust his administrative remedies under the Comprehensive Merit Personnel Act and that the Mayor and Chief of Police could not be held liable under the doctrine of *respondeat superior.*

## B. *The Legal Malpractice Action*

On October 20, 1995, Mr. Lockhart—represented by new counsel—filed a complaint in the Superior Court against Ms. Cade alleging legal malpractice, breach of contract, and breach of fiduciary duty. The complaint stated that Ms. Cade had been professionally negligent in the following respects:

> When the Plaintiff's failure to exhaust his administrative remedies was raised as an issue by the defendants in their motion to dismiss, Cade failed to advise the court that because Plaintiff was no longer employed by the MPD at the time of his job interview with the Department of Commerce, there was no requirement for Plaintiff to exhaust his administrative remedies.

> \*   \*   \*   \*   \*   \*

> ... Cade failed to advise Plaintiff that there is a one-year statute of limitations [for defamation claims] and that his claims may be barred. The defamatory statements were published on August 27, 1991.... Notwithstanding, Cade waited until October 6, 1992, to file her defamation claim despite the fact that Cade was advised of the defamation claim on or about August 13, 1992.

> \*   \*   \*   \*   \*   \*

> Cade named the wrong parties as defendants in the complaint. The District of Columbia can be held liable under the doctrine of respondeat superior for the

---

1. It also appeared that Inspector Robinson had destroyed what was left of the first urine sample before it could be sent to an independent laboratory for further testing.

intentional torts of its employees (specifically MPD personnel) acting within the scope of their employment. Therefore, Cade should have sued the District of Columbia instead of the Mayor and the Police Chief.

\* \* \* \* \* \*

... In response to Plaintiff's inquiry as to whether an appeal had been filed ... Cade replied that she was, indeed, in the process of filing an appeal. In fact, an appeal was never filed.

Subsequent to Cade's failure to appeal the dismissal, she filed a Motion for Reconsideration on December 12, 1994. This Motion was the first time that Cade informed the court that Plaintiff was no longer employed by the MPD at the time of the alleged defamatory statements and, as such, that Plaintiff did not have an obligation to exhaust his administrative remedies. The Motion for Reconsideration was denied by the court on September 8, 1995. The period within which such requests for further relief from the dismissal order would have had to have been filed expired on August 29, 1994, thus forever barring Plaintiff's cause of action.

The complaint sought compensatory damages in the amount of $250,000, along with attorneys' fees and costs.

Ms. Cade filed an answer to the complaint on November 16, 1995, but failed to comply thereafter with the court's pre-trial scheduling order. She did not serve her discovery materials by the court-ordered deadline, nor did she even request an enlargement of time for doing so until two days after that deadline had passed. The request was granted, but Ms. Cade subsequently filed a second motion for enlargement of time. Finally, after Ms. Cade's repeated delays in the litigation, Mr. Lockhart filed a motion for default judgment.

In light of Ms. Cade's assertion that her delinquency was due to her husband's serious illness, the court denied Mr. Lockhart's motion, but noted in its order, "Defendant is cautioned, however, that if her personal problems continue to interfere with her ability to defend this action, she would be well advised to retain counsel to act for her." Ms. Cade apparently ignored the court's warning, continued to disregard the scheduling order, and failed to respond to Mr. Lockhart's discovery requests. On June 4, 1996, Lockhart filed a motion for reconsideration, or in the alternative to compel discovery. The court granted the motion and entered a default against Ms. Cade. *See* Super. Ct. Civ. R. 55(a). In granting the default, the court ordered that the case be set for an *ex parte* hearing on damages.

### C. *The Ex Parte Hearing*

At the *ex parte* hearing, Mr. Lockhart testified about the defamatory statements of some of his previous supervisors in the police department and the impact on him of Ms. Cade's negligence. In addition, he submitted his own affidavit to show his pecuniary losses, a memorandum from Edward Meyer of the Department of Commerce, and a report from Alan Banov, Esquire, regarding Ms. Cade's handling of the case. Mr. Meyer's memo stated that the Department of Commerce had declined to hire Mr. Lockhart "because of his suitability [*sic*] based upon reference checks with his former supervisors." Specifically, the memo noted that "Inspector Richie indicated ... that Mr. Lockhart had left his position under negative circumstances. [He] also indicated that Mr. Lockhart performed minimally and did not have analytical skills." Captain Proctor also "was extremely negative regarding Mr. Lockhart's ability, attitude, and performance." Mr. Banov, an attorney specializing in employment law, provided an eleven-page critique of Ms. Cade's handling of the case, pointing out defects in the complaint, the motion to dismiss, the joint pre-trial statement, and the motion for reconsideration. In addition, Mr. Banov said that "[b]ased on my readings and experience, I would guess that Mr. Lockhart would probably have received at least $20,000 [in damages], but no more than $250,000. The most reasonable guess is that the range would be between $35,000 and $200,000."

At the close of the hearing, the court said to Mr. Lockhart's counsel:

... [A]ll I have is the self-serving statements of Mr. Lockhart.... I haven't heard any evidence that I would credit, other than his own self-serving statements

. . . .

Are you going to call someone from the police department to establish that he was not the subject of an investigation?

\*   \*   \*   \*   \*   \*

All right, then, you don't have any witnesses. How are you going to establish that he would have prevailed, proof of the defense? ... He is the plaintiff. And, of course, he is going to say that he was defamed. But I think that I am entitled to take ... his statements with a large grain of salt.

\*   \*   \*   \*   \*   \*

... This was the hearing. I find that you had full notice of the hearing. You had ample opportunity to prepare. You had ample notice to bring witnesses to the hearing.

This is a case [in] which you have to prove that, even assuming that the lawyer didn't file the papers on time, that had she filed it, she would have prevailed. And I am unable to ... reach that conclusion.

Since Ms. Cade filed an answer to the complaint, the fact that a default has been entered doesn't exclude the requirement that you must prove the substance of the complaint, and more than damages. I find that you have not produced sufficient evidence to do anything like that, and the request for damages and default for malpractice is denied.

## II

### A. The Effect of the Default

The entry of a default under Civil Rule 55(a) must be distinguished from a judgment by default under Rule 55(b). In general, the entry of a default does not constitute a judgment, but simply precludes the defaulting party from offering any further defense on the issue of liability. *See Clark v. Moler*, 418 A.2d 1039, 1042 (D.C.1980); 46 AM.JUR.2D *Judgments* § 266, at 578 (1994).

An entry of default is simply an interlocutory order, whereas a default judgment "is a final judgment that terminates the litigation and decides the dispute." *Id.* (footnote omitted).

In a large majority of jurisdictions, including the District of Columbia, the entry of a default "operates as an admission by the defaulting party that there are no issues of liability, but leaves the issue of damages unresolved until entry of judgment ...." *Id.* at 579; *see* B. Finberg, Annotation, *Necessity of Taking Proof as to Liability against Defaulting Party*, 8 A.L.R.3D 1070, 1073 (1966). Unless the default order provides otherwise,[2] proof of liability thus becomes unnecessary. *See Firestone v. Harris*, 414 A.2d 526, 528 (D.C.1980) (entry of default establishes the non-defaulting party's right to recover); *Taylor v. Johnson*, 262 A.2d 803, 804 (D.C. 1970) (in child support case, the effect of the entry of default is the admission of the truth of well-pleaded allegations in the complaint; *ex parte* proof is limited to the amount of support to be awarded); *Maryland ex rel. John F. Casey Co. v. Travelers Indemnity Co.*, 197 A.2d 265, 266 (D.C.1964) (entry of default establishes liability without further proof of right to recover); *Ramey v. Hewitt*, 188 A.2d 350, 351 (D.C.1963) (entry of default constitutes an admission by defendant of plaintiff's right to recover); *Anderson v. Gallman*, 99 A.2d 560, 561 (D.C.1953) (entry of default establishes liability, and *ex parte* proof should be limited to the amount of damages); *accord, e.g., United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir.1989); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Thus the only issue remaining before the trial court in this case was the extent of the damages Mr. Lockhart sustained as a result of Ms. Cade's legal malpractice.

There is language in *D.C. Transit System, Inc. v. Young*, 293 A.2d 488, 489 (D.C.1972), to the effect that a default should not be entered if the defendant has filed an answer, and that in such a situation "the

---

**2.** As it did, for example, in *Providence Hospital v.*     *Dorsey*, 634 A.2d 1216, 1218 (D.C.1993).

plaintiff must be put to his proof [of liability]." This statement appears to be somewhat in tension with our decision in *Firestone v. Harris, supra,* in which the entry of a default was affirmed even though the defendant had filed not only an answer but also a counterclaim.[3] We need not try to resolve that tension here, however, because we can construe the entry of default in this case as a permissible sanction under the discovery rules. Rule 37(d)(2) of the Superior Court Civil Rules permits the court to impose any sanction authorized by Rule 37(b)(2)(A), (B), or (C) on a party who fails to comply with a discovery request. One of the sanctions listed in Rule 37(b)(2)(C) is the entry of "a judgment by default against the disobedient party." When Mr. Lockhart filed his motion for default judgment, Ms. Cade had filed an answer, but she had failed to provide discovery, despite repeated requests and at least two extensions of time. In these circumstances the court had the power under Super. Ct. Civ. R. 37(d)(2) to enter a default judgment (and thus necessarily a default) as a sanction for her discovery violations. Indeed, the same thing happened in *Firestone,* which perhaps may explain why the court in *Firestone* did not find it necessary to distinguish *Young.*

█ Furthermore, the default order itself directed that the case be set "for an *ex parte* proof hearing on damages on the next available date on notice to all parties." When that hearing was held, however, the trial judge suddenly decided that Mr. Lockhart must prove liability as well as damages, contrary to the specific language of the default order ("hearing *on damages*") which that same judge had signed just a few weeks earlier. This is not to say, of course, that a trial judge may not change his mind about a matter before a final judgment is entered; on the contrary, judges throughout the land change their minds every day, without appellate consequences. *See, e.g., United States v. Green,* 134 U.S.App.D.C. 278, 279, 414 F.2d 1174, 1175 (1969) (when trial judge withdrew oral ruling and entered a new order after

hearing further argument, original ruling had "no legal significance" and was not subject to review). However, when a judge unexpectedly departs from the terms of a prior order, any party prejudiced by that departure (such as Mr. Lockhart) should be entitled to redress, notwithstanding any seemingly contrary language in *Young.*

We therefore hold, in light of *Firestone, Ramey, Anderson,* and similar cases here and elsewhere, that the entry of the default against Ms. Cade relieved Mr. Lockhart of any further obligation to prove liability, and that the *ex parte* hearing should have been confined to proof of damages only.

### B. *Damages*

█ The question then arises as to what damages Mr. Lockhart is entitled to recover. Relevant case law in the District of Columbia is rather sparse. However, in most jurisdictions, when the former client was a plaintiff in a civil action, and it is alleged that the attorney's negligence resulted in the loss of the client's claim, it has generally been held that the value of the lost claim—that is, the amount the client would have recovered but for the attorney's negligence—is a proper element of the damages recoverable from the attorney. *See Swann v. Waldman,* 465 A.2d 844, 846–847 (D.C.1983); *Winter v. Brown,* 365 A.2d 381, 385 (D.C.1976); John E. Theuman, Annotation, *Measure and Elements of Damages Recoverable for Attorney's Negligence in Preparing or Conducting Litigation—Twentieth Century Cases,* 90 A.L.R.4TH 1033, 1045 (1991). How to determine the value of Mr. Lockhart's lost claim, however, is a question we leave to the trial court to decide in the first instance on remand, since it has not been addressed by the parties on this appeal.[4]

█ Mr. Lockhart may also be entitled to recover some or all of the $10,000 retainer that he paid to Ms. Cade, and any other fees and costs not disclosed by the present record. A client who has advanced sums to an

---

3. The case was remanded for a new hearing on damages only. *See* 414 A.2d at 528.

4. Mr. Lockhart concedes, in a footnote in his brief, that his cause of action for "harassment" is not viable, since harassment is not recognized as a separate tort in the District of Columbia.

attorney to cover litigation costs and expenses is frequently allowed to recover those sums, as compensatory damages, in a subsequent malpractice action against the attorney. *See Welder v. Mercer,* 247 Ark. 999, 1002–03, 448 S.W.2d 952, 954 (1970); *Pete v. Henderson,* 124 Cal.App.2d 487, 488–90, 269 P.2d 78, 79 (1954); 7 AM. JUR. 2D *Attorneys at Law* § 238, at 260 (1994). In the present case, Ms. Cade accepted a retainer with the understanding that she would provide certain services to Mr. Lockhart, but she failed to do so; as a result, Mr. Lockhart paid for services that he did not receive. It is self-evident that Ms. Cade should not benefit financially from her own negligence. On the other hand, she may have rendered services and incurred litigation expenses (*e.g.,* filing fees, copying costs, depositions) of which we are not aware. On remand, therefore, the trial court should determine how much of the money Mr. Lockhart paid to Ms. Cade must be returned to him, after considering any evidence that Ms. Cade may offer in mitigation to show that she should be allowed to keep some of that money.

By outlining these two types of damages that Mr. Lockhart may recover from Ms. Cade, upon sufficient proof at the remand hearing, we do not mean to foreclose the recovery of other possible damages. We leave it to the trial court to determine, at that hearing, whether Mr. Lockhart has suffered any other damages that might be recoverable as well.

### III

We hold that the trial court erred in dismissing Mr. Lockhart's claim for failure to prove liability at the *ex parte* hearing, because the entry of default established liability without any need for further proof. We remand the case to the trial court for a new hearing[5] to determine the amount of damages, and nothing more. Both parties may participate in that hearing, offer relevant evidence, and cross-examine each other's wit-

nesses, in a manner consistent with *Firestone v. Harris, supra,* 414 A.2d at 528.

*Reversed and remanded.*

---

5. Since the judge who originally heard this case has recently retired and left the court, the case will have to be reassigned to another judge.