*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-1201

BALASUBRAMANIAM SIVARAMAN, APPELLANT,

V.

GUIZZETTI & ASSOCIATES, LTD., *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-4478-17)

(Hon. Florence Y. Pan, Trial Judge)

(Argued February 26, 2020                    Decided June 11, 2020)

*Jeremy Greenberg*, with whom *Denise M. Clark* was on the brief, for appellant.

*Roseann R. Romano* and *Daniel A. Katz* were on the brief for *amicus curiae*, Metropolitan Washington Employment Lawyers Association, in support of appellant.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and FISHER and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*:  Balasubramaniam Sivaraman sued his former employer, Guizzetti & Associates, Ltd. (G&A), along with its founder and one-time president, Antonio Guizzetti.  Mr. Sivaraman alleged that G&A failed to pay him

portions of his salary, failed to pay him a promised moving stipend, failed to reimburse him for various business expenses, unlawfully fired him when he sought those amounts owed, and then failed to pay him for work he performed after his termination on a consultancy basis, all in violation of the District of Columbia's Wage Payment and Collection Law, D.C. Code §§ 32-1301 to -1312 (2019 Repl.), and its Minimum Wage Act, D.C. Code §§ 32-1001 to -1015 (2019 Repl.). The trial court entered a default against both Mr. Guizzetti and G&A and held a hearing dedicated to assessing damages. After the hearing, the trial court awarded Mr. Sivaraman $20,084.21.[1] The amount of that award is the subject of this appeal.

Mr. Sivaraman asserts the trial court made four errors when calculating his award: (1) the trial court should have awarded him treble damages for all unpaid "wages," as that term is defined in D.C. Code § 32-1301; (2) the trial court should have treated the unpaid moving stipend and business expenses as wages under that same provision; (3) the trial court abused its discretion when it awarded him no damages for his successful retaliation claim; and (4) the trial court improperly discredited the number of hours that Mr. Sivaraman claimed to have worked during the post-termination consultancy period. We agree with his first assignment of error,

---

[1] The trial court also awarded Mr. Sivaraman $17,203.20 in attorney's fees and $840.03 in litigation costs. Neither of those amounts is contested in this appeal.

agree in part with the second and third, and disagree with the fourth. We vacate the damages award and remand for the trial court to recalculate it consistent with this opinion.

## I.

Mr. Guizzetti hired Mr. Sivaraman to be a manager in the Washington, D.C., office of his international consulting firm, G&A.[2] As President of G&A, Mr. Guizzetti agreed to pay Mr. Sivaraman a $40,000 annual salary and a $2,000 relocation stipend. He further agreed to reimburse Mr. Sivaraman for any "out of pocket business expenses" incurred while performing work for the company, which required some international travel. Mr. Sivaraman moved to the District of Columbia and began his work with G&A in May 2014.

When he received his first paycheck, Mr. Sivaraman discovered he had not been paid his salary for May 2014 or the promised $2,000 relocation stipend. Over

---

[2] We take the following facts as having been established for liability purposes given the entry of a default in Mr. Sivaraman's favor. *See Lockhart v. Cade*, 728 A.2d 65, 68 (D.C. 1999) ("[T]he entry of a default operates as an admission by the defaulting party that there are no issues of liability, but leaves the issue of damages unresolved . . . ." (internal quotation marks omitted)).

a year later, in December 2015, G&A again failed to pay Mr. Sivaraman a portion of his salary for that month (it had missed one of his two bimonthly payments). In June 2016, Mr. Sivaraman emailed Mr. Guizzetti requesting his (1) unpaid salary, (2) unpaid relocation stipend, and (3) reimbursement for various business expenses. G&A terminated Mr. Sivaraman eleven days later. Shortly after terminating him as a salaried employee, Mr. Guizzetti asked Mr. Sivaraman to continue working for G&A on a consultancy basis. While the two apparently never formalized an agreement specifying Mr. Sivaraman's pay or duties during this post-termination period, he resumed working for G&A from July 1 to October 7, 2016; however, he was never paid for any of that work.

Mr. Sivaraman filed a complaint in the Superior Court seeking his unpaid salary, unpaid relocation stipend, unreimbursed business expenses, damages stemming from what he claimed was his unlawful termination, plus liquidated damages. While Mr. Guizzetti initially filed an answer denying all allegations on behalf of G&A, he otherwise failed to comply with the trial court's various orders and deadlines. For instance, the trial court informed Mr. Guizzetti that while he was entitled to represent himself pro se, he could not file pro se pleadings on behalf of

G&A, which required counsel.[3]  Nonetheless, G&A never retained counsel, and Mr. Guizzetti continued to submit pro se pleadings on G&A's behalf.  Mr. Guizzetti also missed various court dates.  While he explained that he was living in Italy and unable to travel due to health issues, the trial court accommodated him by permitting him to appear telephonically.   After Mr. Guizzetti failed to appear telephonically at a status conference on April 20, 2018, the trial court entered a default against him and G&A.

The court then held a hearing dedicated to damages, at which both Mr. Sivaraman and Mr. Guizzetti testified (the latter by telephone only).[4]  Mr. Sivaraman also submitted exhibits, including a calendar he prepared which purported to detail the hours he worked during the consultancy period from July 1 through October 7, 2016.  The calendar indicated that Mr. Sivaraman consistently worked ten-and-a-half hour days, six days a week, plus three hours each Sunday, for a total of sixty-six hours each week.  Mr. Guizzetti disputed that account and contended Mr. Sivaraman performed no work at all for G&A after his termination in June of 2016,

---

[3] *See Moore Energy Res., Inc., v. Pub. Serv. Comm'n*, 785 A.2d 300, 304 (D.C. 2001) ("[A] corporation cannot appear in court *pro se*.").

[4] The hearing took place over two days, May 25 and October 12, 2018.  Mr. Sivaraman was physically present for the first hearing date but appeared telephonically for the second.  Mr. Guizzetti appeared telephonically for both.

a contention that was undermined by emails in which Mr. Guizzetti tasked Mr. Sivaraman with work after his termination.

The trial court found that Mr. Sivaraman was entitled to his unpaid salary for May 2014 and December 2015, which totaled $4,999.93. The trial court also found that Mr. Sivaraman was entitled to $2,000 for the promised relocation stipend and $2,044.28 in unreimbursed business expenses. While Mr. Sivaraman asked that he be given an additional award trebling each of those amounts, *see* D.C. Code § 32-1308(a)(1)(A)(ii), the trial court declined that request. It reasoned that the moving stipend and business expenses were not "wages" under D.C. Code § 32-1301, so that they did not qualify for a treble damages award. In any event, the court decided not to award treble damages even as to the unpaid salary (which indisputably constitutes wages under D.C. Code § 32-1301), reasoning that "there [was] a lot of play in [the] numbers" and Mr. Sivaraman would receive an equitable amount without trebling any of the above amounts.

With respect to the post-termination consultancy period, the trial court found that because no contract was ever formed, Mr. Sivaraman should be compensated for his hours worked at the minimum wage rate. Rejecting Mr. Sivaraman's account of hours worked, and rejecting Mr. Guizzetti's account that he performed no work

at all, the trial court estimated that Mr. Sivaraman worked forty hours a week for six weeks, which at the minimum wage of $11.50, amounted to $2,760 (6 x 40 x $11.50). It did award Mr. Sivaraman an additional $8,280 in treble damages for this unpaid work during the post-termination consultancy period.[5]

As to Mr. Sivaraman's retaliation claim, the trial court awarded him no damages after explaining that it did not "give a lot of credence to the retaliation claim." While the court acknowledged that it had entered a default for Mr. Sivaraman on this claim, it repeatedly expressed its doubts as to its merits:

> I understand Mr. Guizzetti who is not represented to have meritorious, potentially meritorious defenses as to why Mr. Sivaraman was terminated in June. So, I am here fashioning an appropriate amount of damages in a default situation and because although we are in default I don't really, I am not really sure that on the merits Mr. Sivaraman would have prevailed on the retaliation claim. I am not going, I am going to exercise my discretion not to award back pay because I don't think it is an appropriate amount of damages given the totality of the circumstances . . . .

---

[5] *See* D.C. Code § 32-1012(b)(1) ("[A]ny employer who pays any employee less than the wage to which that employee is entitled . . . shall be liable to that employee in the amount of the unpaid wages . . . and an additional amount as liquidated damages equal to treble the amount of unpaid wages.").

The court reiterated its stance that it was "not at all certain that [the] retaliation claim would have been resolved in Mr. Sivaraman's favor" as animating its decision to award no damages on the retaliation claim.

The court awarded Mr. Sivaraman a total of $20,084.21 in damages.[6]

## II.

Mr. Sivaraman now contends that the trial court committed various errors in calculating his award. He argues (1) he was entitled to treble damages for all unpaid wages during his time as a salaried employee; (2) those unpaid wages included his unpaid moving stipend and unreimbursed business expenses; (3) the trial court abused its discretion when it awarded him no damages for his retaliation claim; and (4) the trial court improperly discounted the number of hours that Mr. Sivaraman claimed to have worked during the post-termination consultancy period. Mr. Guizzetti and G&A did not respond, as neither has participated in this appeal. We address each challenge in turn.

---

[6] That amount reflects $4,999.93 in unpaid salary, $2,000 for the unpaid relocation stipend, $2,044.28 in unreimbursed business expenses, $2,760 in unpaid consultancy wages, $8,280 as treble damages for those consultancy wages, and no damages stemming from the retaliation claim ($4,999.93 + $2,000 + $2,044.28 + $2,760 + $8,280 = 20,084.21).

## A. Treble Damages for Unpaid Wages

The District's Wage Payment and Collection Law (WPCL), D.C. Code §§ 32-1301 to -1312 (2019 Repl.), provides basic guarantees to ensure that employers pay their workers and do so in a timely fashion. Its provisions dictate how often employers must pay their employees, D.C. Code § 32-1302 (generally, "at least twice during each calendar month"), how quickly they must do so after discharge or resignation, D.C. Code § 32-1303, and provide that the WPCL's various substantive protections cannot be waived via "private agreement," D.C. Code § 32-1305. In addition to those guarantees, the WPCL contains robust enforcement mechanisms, including criminal and administrative penalties. *See, e.g.*, D.C. Code § 32-1307(a)(2)(B) (repeated willful violations punishable by up to "$10,000 per affected employee" and up to "90 days" imprisonment).

At issue here is the provision governing civil enforcement actions, D.C. Code § 32-1308, which provides that "a person aggrieved by a violation" of the WPCL, upon prevailing in a civil suit against their employer, "shall be . . . entitled to . . . [l]iquidated damages equal to treble the amount of unpaid wages." *Id.* at § 1308(a)(1)(A)(ii). This provision makes clear that treble damages are mandatory, not discretionary, if requested. Its directive that a prevailing plaintiff "*shall* be . . .

*entitled* to" certain relief uses familiar statutory language for imposing mandatory and non-discretionary awards. *See Parrish v. District of Columbia*, 718 A.2d 133, 136 (D.C. 1998) ("It is well established that the word 'shall' is 'a term which creates a duty, not an option.'" (quoting *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1257 (D.C. 1990))); *Roumel v. Goldberg*, 46 A.2d 114, 115 (D.C. 1946) ("The word 'entitled' means having a right to . . . ."). A treble damages award is also mandated by D.C. Code § 32-1303(4), which is redundant in these particular circumstances, as it provides that an employer "shall pay . . . an amount equal to treble the unpaid wages" whenever an employee's wages are unlawfully withheld post-termination for thirty working days or more, as was the case here.[7]

Our opinion in *Klingaman v. Holiday Tours, Inc.*, 309 A.2d 54 (D.C. 1973), further compels this result. In *Klingaman*, we held that D.C. Code § 36-603(d)

---

[7] When a terminated employee's wages are unlawfully withheld for fewer than thirty working days, § 32-1303(4) requires the employer to pay 10% of the wages withheld per day they were withheld. There is no tension between this provision and the mandatory treble damages provided by § 32-1308(a)(1)(A)(ii), as § 32-1308 is specific to those litigants who pursue civil remedies and prevail via lawsuit. An employer who has unlawfully withheld the wages of a terminated employee but has done so for fewer than thirty days may voluntarily pay the owed wages plus the lesser (10% per day) amount owed under § 32-1303(4), and thereby hope to curtail any cause for litigation and any possibility of § 32-1308's treble damages award.

(1967),[8] which is the predecessor to and identical in relevant respects to the current D.C. Code § 32-1303(4), "ma[de] the awarding of liquidated damages mandatory in a case arising under [the WPCL]." 309 A.2d at 55–56. So too here. The trial court was wrong to conclude that it had discretion to refuse a treble damages award when it was in fact mandated by statute. *See id.* at 56. Mr. Sivaraman was entitled to recover treble damages for all unlawfully withheld wages.

## B. Defining Wages

The harder issue is which of the various amounts owed to Mr. Sivaraman qualify as wages, as the treble damages provision applies only to "the amount of unpaid wages," D.C. Code § 32-1308(a)(1)(A)(ii). We review this question of statutory interpretation de novo. *See Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015). The unlawfully withheld amounts fall into three categories: (1)

---

[8] In relevant part, D.C. Code § 36-603(d) (1967) provided:

> If an employer fails to pay an employee wages earned as required under subsections (a), (b), and (c) of this section, such employer shall pay, or be additionally liable to, the employee, as liquidated damages, 10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required: or an amount equal to the unpaid wages, whichever is smaller . . . .

$4,999.93 of salary, (2) a $2,000 moving stipend, and (3) $2,044.28 in unreimbursed expenses. The trial court found that only the first category qualified as wages, whereas Mr. Sivaraman and his amicus argue that all three satisfy the statutory definition of wages.

The WPCL defines "wages" as:

> [A]ll monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation. The term "wages" includes a:
>
> > (A) Bonus;
> > (B) Commission;
> > (C) Fringe benefits paid in cash;
> > (D) Overtime premium; and
> > (E) Other remuneration promised or owed:
> > > (i) Pursuant to a contract for employment, whether written or oral;
> > > (ii) Pursuant to a contract between an employer and another person or entity; or
> > > (iii) Pursuant to District or federal law.

D.C. Code § 32-1301(3). There is no question that the $4,999.93 of withheld salary qualifies as wages under this definition, as that is indisputably "monetary compensation . . . owed by an employer." In finding that the moving stipend and unreimbursed expenses did not satisfy this statutory definition of wages, however, the trial court reasoned that remuneration, and therefore wages, meant "money paid for work or a service," and that neither the stipend nor reimbursements satisfied that

definition.  We disagree, in part, and conclude that the moving stipend constitutes wages under the WPCL but that the expense reimbursements do not.

*1. The Moving Stipend*

We start with the moving stipend.  This was a $2,000 lump sum promised to Mr. Sivaraman as an enticement to accept Mr. Guizzetti's offer of employment. While it was ostensibly offered to defray the costs of moving, the amount was not dependent upon any expenses actually being incurred; that is, Mr. Sivaraman could have spent no money whatsoever to relocate, and he still would have been entitled to this $2,000 lump sum simply for accepting the offer of employment and starting his job.  For that reason, the stipend might just as easily be referred to as a signing bonus, and bonuses are expressly contemplated as wages under the WPCL, D.C. Code § 32-1301(3) ("The term 'wages' includes a . . . Bonus[.]").  It could also be fairly categorized as a fringe benefit, another type of compensation which is expressly contemplated as wages under the act (at least when it is to be paid in cash, as here), D.C. Code § 32-1301(3)(C).  *See also Jensen v. Fremont Motors Cody, Inc.*, 58 P.3d 322, 330 n.3 (Wyo. 2002) ("We have held that relocation benefits that are promised to an employee as a fringe benefit qualify as wages." (citing *NL Indus., Inc. v. Dill*, 769 P.2d 920 (Wyo. 1989))).

Even if the terms "bonus" and "fringe benefit" were interpreted more narrowly, the moving stipend would nonetheless fit within the statute's residual clause providing that "[o]ther remuneration promised or owed" also constitutes wages. *See* D.C. Code § 32-1301(3)(E). "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Edwards v. United States*, 583 A.2d 661, 664 (D.C. 1990) (footnote omitted) (discussing *ejusdem generis* canon). The $2,000 moving stipend is, at the very least, similar in nature to a bonus or a fringe benefit paid in cash: they are each net monetary benefits conferred on an employee by reason of her employment. We can thus comfortably say the moving stipend fits within this residual clause.

In concluding otherwise, the trial court, focusing on the same "[o]ther remuneration" residual clause, D.C. Code § 32-1301(3)(E), relied upon one particular dictionary definition of remuneration, taken from an unspecified internet source, which provided that remuneration "is money paid *for work or a service*." That may well be one particularly narrow definition of the word, but it is just as susceptible to more sweeping definitions that would include the moving stipend (or, for that matter, expense reimbursements). *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1921 (2002) (defining "remunerate" as "to pay an

equivalent to (a person) for a service, loss, *or expense*" (emphasis added)). The word remuneration—like the word compensation, which also appears in the statutory definition of wages—neither plainly includes nor excludes the moving stipend here. A survey of dictionaries does not advance the ball in either direction.

A recent amendment to D.C. Code § 32-1301, however, makes clear that the D.C. Council has discarded the narrow interpretation advanced by the trial court. Until recently, the WPCL had defined wages in the same manner as the trial court, as "monetary compensation after lawful deductions, owed by an employer *for labor or services rendered*, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." D.C. Code § 32-1301(3) (2012 Repl.) (emphasis added). In 2013, mere months before the start of Mr. Sivaraman's employment at G&A, the D.C. Council jettisoned this once-restrictive definition when it passed the Wage Theft Prevention Amendment Act of 2013, 60 D.C. Reg. 12472, §§ 2061-64. That Act altered the definition of wages by deleting the restrictive "for labor or services rendered" language and replacing it with a host of monetary benefits that are, at least sometimes, not directly tied to labor or services

rendered, including the "[o]ther remuneration" residual clause.[9]  *Id*. at § 2062 (codified as amended at D.C. Code § 32-1301(3) (2019 Repl.)) (including "[b]onus," "[c]ommission," "[f]ringe benefits," and "[o]ther remuneration").[10]

Where the legislature "amends or reenacts a provision, a significant change in language is presumed to entail a change in meaning." *Arangure v. Whitaker*, 911 F.3d 333, 341 (6th Cir. 2018).  The trial court's interpretation of wages is incompatible with these 2013 amendments supplanting the "for labor or services rendered" restriction with broader categories of wages that fall outside those bounds. Based on the text and enactment history of this provision, we conclude that the moving stipend qualifies as wages.

---

[9]  The 2013 amendment also added the word "all" before "monetary compensation," further indicating a broadening of the definition of wages to include things beyond traditional salary.

[10]  Bonuses frequently are not tied to any labor or services rendered, but instead to some other benchmark, like signing a contract of employment. *See, e.g.*, *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 3 (D.D.C. 2018) (describing bonuses awarded under a "Gainsharing program" to "store employees whose departments came in under budget").

*2. Expense Reimbursements*

We reach the opposite conclusion with regard to the $2,044.28 in unreimbursed business expenses. Unlike the moving stipend and the various examples of wages provided in § 32-1301(3)(A)–(E), reimbursements for specific expenses confer no monetary benefit or enrichment on an employee, but serve only to make her whole. As explained above, the statutory terms compensation and remuneration neither obviously include nor exclude expense reimbursements. Dictionary definitions cut in both directions. *Compare* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra*, at 1921 (including, as one meaning of "remunerate," "to pay an equivalent . . . for a[n] . . . expense"), *with* COLLINS ONLINE DICTIONARY, https://www.collinsdictionary.com/dictionary/english/remuneration https://perma.cc/EZ7G-EAKR (last visited June 6, 2020) ("Someone's remuneration is the amount of money that they are paid *for the work* that they do." (emphasis added)).[11] The surrounding context of the WPCL, however, convinces us that wages do not include expense reimbursements.

---

[11] *See generally 1618 Twenty-First Street Tenants' Ass'n, Inc. v. Phillips Collection*, 829 A.2d 201, 203 (D.C. 2003) ("In finding the ordinary meaning, '[t]he use of dictionary definitions is appropriate . . . .'" (quoting *West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 727 (D.C. 1994))).

Pulling back from the particular statutory definition of wages, we stress that the word being defined is itself a critical part of the interpretive calculus: "[T]he word being defined is the most significant element of the definition's context." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 232 (2012). While it is possible for a statutory definition to deviate from the normal meaning of a word, there is a strong presumption against it because "counterintuitive definitions are a bane." *Id.* The word wages ordinarily refers to one's salary and other employment-related earnings, rather than mere repayments for expenses incurred. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra*, at 2568 (defining "wage" as "a pledge or payment . . . esp. for labor or services usu. according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits"). It would be bizarre if a person, upon being asked what wage they made the prior year, included various expenses they were reimbursed for during that time. It would be just as strange to say that they had *earned* those reimbursements, though the WPCL repeatedly refers to "wages" as amounts "earned" throughout its statutory text. *See, e.g.*, D.C. Code § 32-1302 ("An employer shall pay all wages earned to his or her employees on regular paydays . . . ."); § 32-1303 (using the term "wages earned" four times). Both

the ordinary meaning of wages and the repeated references to wages as earned strongly suggest that expense reimbursements are not wages.[12]

The *ejusdem generis* canon already employed above, and its companion *noscitur a sociis* canon,[13] point to the same conclusion. While a moving stipend unconditioned on any particular incurred expenses is at least similar to, if not indistinguishable from, a signing bonus, the same cannot be said of expense reimbursements. Unlike bonuses, commissions, overtime premiums, and fringe benefits paid in cash, D.C. Code § 32-1301(3)(A)–(D), dollar-for-dollar

---

[12] We do not equate earned wages with wages rendered for "work or services," or for "labor or services." Although the latter wages are a kind of the former, the two are not synonymous. As explained *supra*, there are several monetary benefits not directly tied to labor or services included in the definition of wages, *see* D.C. Code § 32-1301(3), which the WPCL implicitly recognizes as being earned, *see* §§ 32-1302 to -1303, and which would fit readily within the description of amounts earned.

[13] These canons are often applied in tandem because the *ejusdem generis* canon is a particular application of the *noscitur a sociis* canon. The latter invokes the general proposition that "a word [or phrase] is known by the company it keeps," *Burke v. Groover, Christie & Merritt, P.C.*, 26 A.3d 292, 302 n.8 (D.C. 2011), whereas the former, as discussed above, applies to the particular circumstance we have here, where a series of specific terms are followed by a more generic catchall term, like "[o]ther remuneration."

reimbursements merely neutralize a specific loss, rather than enriching the employee.[14]

Interpreting wages to include expense reimbursements would also sow inconsistencies between the WPCL and the Minimum Wage Act, D.C. Code §§ 32-1001 to -1015 (2019 Repl.), which is another point against that interpretation. "The comparison of statutes *in pari materia* is an aid in determining legislative intent when the language of a statute is ambiguous." *Holt v. United States*, 565 A.2d 970, 975 (D.C. 1989). Sometimes referred to as the related-statutes canon, the doctrine of *in pari materia* simply means "laws dealing with the same subject . . . should if possible be interpreted harmoniously." SCALIA & GARNER, *supra*, at 252.[15] The Minimum Wage Act, among other things, sets minimum base wages for hourly

---

[14] That is part of the reason why the Supreme Court, albeit in a different context, concluded that wages did not include "lunch reimbursements." *See Cent. Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21, 29 (1978) (describing wages as meaning something "narrower" than income); *see also Rowan Cos. v. United States*, 452 U.S. 247, 254 (1981) ("'[W]ages' is a narrower concept than 'income . . . .'").

[15] Of course, "statutory sections should not be read with reference to each other . . . if their respective subject matters and purposes are different." *District of Columbia v. Thompson*, 593 A.2d 621, 630 (D.C. 1991). But that is not the case here. The WPCL and the Minimum Wage Act both address and enforce the payment of wages in the District of Columbia, and counsel for Mr. Sivaraman agreed at oral argument that we ought to harmonize the meaning of wages between the statutes to the extent possible.

employees.  D.C. Code § 32-1003(5)(A).  It would be perverse if an employer's reimbursement of expenses counted toward satisfying their obligation to pay "the minimum hourly wage required."  *See id.*

The District of Columbia Department of Employment Services, charged with implementing the Minimum Wage Act, *see* D.C. Code § 32-1006; 7 DCMR § 900 (2020), treats expense reimbursements as falling outside the definition of wages, and we give "significant deference" to its interpretation, *District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys. Inc.*, 56 A.3d 477, 481 (D.C. 2012).  In its "Wage-Hour Rules," 7 DCMR §§ 900–17 (2020), DOES has promulgated a series of regulations governing how wages are calculated in certain circumstances.  *See, e.g.*, 7 DCMR § 906.1 (requiring employers to pay an employee "for one additional hour at the minimum wage" for any "split shift").  The Wage-Hour Rules also provide, as pertinent here:  "In addition to the wages required by this Chapter, the employer shall pay the cost of travel expenses incurred by the employee in performance of the business of the employer."  7 DCMR § 909.1.  The same "in addition to" language is present in other sections of the Wage-Hour Rules obligating employers to pay for certain work-related expenses.  *See* 7 DCMR § 908.1 (requiring employers to pay for employees' uniforms and protective clothing); § 910.1 (requiring employers to pay for employees' work tools).  Contrary to Mr. Sivaraman

and his amicus's arguments, these regulations treat expense reimbursements not as wages, but as something separate. If these sections' prefatory language was "included in the wages required by this Chapter" or "as part of" them, that would help Mr. Sivaraman's case. But they do just the opposite. That expense reimbursements are in addition to wages indicates that they are something apart from, rather than of a piece with, wages.

Finally, Mr. Sivaraman and his amicus press the policy argument that it makes little sense to treat withheld expense reimbursements differently from withheld salary. After all, if an employee is out money owed to her, it hardly matters from a practical perspective whether the amount would confer a net benefit or simply offset a loss. It is a forceful point but not one that can bear the weight Mr. Sivaraman places on it. The WPCL places all manner of restrictions on how and when wages are paid.[16] While it might make practical sense to apply its enforcement provisions across the board to any moneys owed,[17] there is no indication that the legislature

---

[16] For example, consider the statutory requirement that "all wages" be paid on "paydays designated in advance by the employer," D.C. Code § 32-1302. If an employer reimburses expenses immediately, and outside of those designated paydays, they would be in violation of this provision if, contrary to our view, expense reimbursements were in fact wages.

[17] Should an unpaid money judgment that an employee has against an employer also be treated as wages and subject to treble damages? What about a

contemplated that application or meant for the universe of other restrictions on wage payments and collections to apply to expense reimbursements. If it had intended that result, we would expect a clearer indication that it meant to deviate from the standard definition of wages than what we have here.

## C. Retaliation Award

Mr. Sivaraman next argues that the trial court abused its discretion when it awarded him no damages for his retaliation claim. He acknowledges that the trial court has broad discretion to fashion "appropriate relief" for the illegal retaliation, *see* D.C. Code § 32-1311(c), but maintains that it abused that discretion by revisiting and openly doubting the merits of this claim before issuing this non-award. He has a point. After the trial court entered a default in Mr. Sivaraman's favor, it had no occasion to revisit the merits of his retaliation claim and instead should have fashioned appropriate relief while treating the claim as meritorious. *See Lockhart v. Cade*, 728 A.2d 65, 68–69 (D.C. 1999) (explaining that the only issue remaining

---

personal loan that an employer borrowed from her employee? We have no ready answers for these policy questions, except to say that they are policy questions for the legislature. As for the current incarnation of the WPCL, we do not think the legislature has evinced any intention to capture debts like these that fall far outside the bounds of the standard definition of wages.

before the trial court after it entered default was the extent of plaintiff's damages). If the trial court's non-award was in fact based on such a reassessment of the merits, that would be an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A [trial] court by definition abuses its discretion when it makes an error of law."); *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) ("[A] trial court abuses its discretion when it rests its conclusions on incorrect legal standards."). Because the record is unclear as to whether that was in fact the basis for the trial court's non-award, we instruct the trial court to reassess its damages award on the retaliation claim upon remand and, if the award remains nil, state its reasons uninfected by any doubts as to the claim's merits.

The WPCL makes it unlawful for "any employer to discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person because that employee or person has" engaged in certain activities protected under the law. D.C. Code § 32-1311(a). Upon the trial court's entry of the default, both G&A and Mr. Guizzetti were deemed to have admitted to such retaliation, as alleged in Mr. Sivaraman's complaint.[18] *See Lockhart*, 728 A.2d at 68 ("[T]he entry

---

[18] Given the trial court's skepticism about whether Mr. Sivaraman even alleged a prima facie case of retaliation, we note separately that he did. One of the activities protected under the WPCL includes making a complaint to one's employer that the employer violated a provision of the law. D.C. Code § 32-1311(a)(1). Mr.

of a default 'operates as an admission by the defaulting party that there are no issues of liability . . . .'"); *Rest. Equip. & Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 956 n.6 (D.C. 2004) ("[T]he entry of a default 'simply precludes the defaulting party from offering any further defense on the issue of liability.'" (quoting *Lockhart*, 728 A.2d at 68)). All that was left for the trial court to do was determine the extent of the damages sustained by Mr. Sivaraman as the result of his termination and then craft an appropriate award. *See Lockhart*, 728 A.2d at 68, 70.

Instead of confining itself to that task, the trial court repeatedly expressed skepticism about the merits of Mr. Sivaraman's retaliation claim as animating its non-award. It reasoned, "I do not think that it is appropriate to award back pay under these circumstances because . . . although [we are] in a default situation I don't give a lot of credence to the retaliation claim. . . . I am going to exercise my discretion not to award back pay . . . ."[19] In *Lockhart*, we reversed a trial court's denial of

Sivaraman's June 2016 email complaining he had not been paid, requesting to be paid, and inquiring when he could expect payment constitutes such a complaint. It is of no consequence that Mr. Sivaraman did not mention the WPCL in his email. *See id.* at § 1311(b).

[19] The trial court made several comments on the merits of Mr. Sivaraman's retaliation claim: "I don't really know that there was retaliation, liability as to the retaliation claim to be honest . . . ."; "[Mr. Guizzetti] had some defenses here I am not at all certain that that retaliation claim would have been resolved in Mr. Sivaraman's favor."; "Mr. Guizzetti has defenses he would have raised as to why

damages under similar circumstances, where a default was entered in the plaintiff's favor yet the trial court issued no award because of the plaintiff's failure to "produce[] sufficient evidence" to "prove the substance of the complaint." 728 A.2d at 67–68. Finding reversible error, we held that the judge "should have been confined to proof of damages only" and remanded the case for reconsideration of the damages award. *Id.* at 69. We reach the same result here.

This is not to foreclose the possibility that the trial court, upon remand and without reconsideration of the merits, will remain of the view that no award is appropriate for this retaliation claim. There could be proper bases for coming to that conclusion; for instance, it may be that the court believes that Mr. Sivaraman's post-termination consultancy work, for which he has already received a monetary award (plus treble damages), obviates any need for a separate award on the retaliation claim. But that is a discretionary call for the trial court in the first instance, and because it appears that this non-award was based on an inappropriate reconsideration of the merits of the retaliation claim, the trial court should revisit it on remand.

---

Mr. Sivaraman was terminated . . . ."; "I am not really sure that on the merits Mr. Sivaraman would have prevailed on the retaliation claim."; "[I]t really isn't clear to me that he did not necessarily have meritorious defenses . . . ."

**D. Hours Worked**

Finally, Mr. Sivaraman argues that the trial court erred when it failed to fully credit his account of the hours he worked during the consultancy period. Unlike the previous argument, his contention here is not that the default in his favor committed the trial court to accepting the number of hours he claimed to have worked in his complaint. Instead, he argues that, while the trial court appropriately considered this as a live issue in the damages phase of the proceedings, Mr. Guizzetti did not present sufficient evidence at the damages hearing to rebut his account of the hours he worked. We disagree.

At the damages hearing, Mr. Sivaraman submitted a calendar purporting to memorialize his hours worked during the post-termination consultancy period, from July 1 to October 7, 2016. The calendar indicated that during this span, he had consistently worked ten-and-a-half hours a day, six days a week, plus three hours each Sunday, for a total of 664 regular hours and 392 overtime hours. Mr. Guizzetti countered that Mr. Sivaraman did no work during that time, and more specifically, indicated his company was closed "during August and September" so that Mr. Sivaraman's claimed hours were "ridiculous." That account was undermined, to

some extent, by emails between the two men showing that Mr. Guizzetti tasked Mr. Sivaraman with work, at least once, post-termination.

The trial court, confronted with two implausible accounts, credited Mr. Sivaraman for having worked forty hours a week for six weeks and awarded him the minimum wage rate ($11.50) for those 240 hours, plus treble damages pursuant to D.C. Code § 32-1012(b)(1). It committed no error in doing so. The judge, as the trier of fact, was free to discredit Mr. Sivaraman's factual assertions related to his damages. *See Kakaes v. George Washington Univ.*, 790 A.2d 581, 586 (D.C. 2002) ("The judge, as the trier of fact, was free 'to either credit or disregard [Dr. Kakaes'] opinion as to [his] calculation of damages.'" (quoting *Columbus Props., Inc. v. O'Connell*, 644 A.2d 444, 448 (D.C. 1994))). Given the cursory and seemingly ad hoc nature of Mr. Sivaraman's calendar purporting to memorialize his hours worked as well as the lack of corroborating evidence, the trial court had good reason to find his accounting incredible. Mr. Sivaraman is also wrong to assert that Mr. Guizzetti failed to contradict his account of hours worked, when in fact Mr. Guizzetti proffered that Mr. Sivaraman did no work at all during the consultancy period, an account which the trial court also did not credit. Contrary to Mr. Sivaraman's arguments, in fixing a damages award, a trial court is not confined to pick between two implausible

extremes offered by the adversarial parties before it.  It is free to find that the truth lies somewhere in between where the parties aver, as it often does.

## III.

We vacate the award and remand for the trial court to recalculate it.  In doing so, the trial court shall include a treble damages award for the unlawfully withheld wages, i.e., the $4,999.93 in unpaid salary and the $2,000 for the unpaid moving stipend.  It shall also revisit its non-award for the retaliation claim uninfluenced by any doubts about the merits of that claim.

*So ordered.*